Kruschke vs. Stefan.

KRUSCHKE, Respondent, vs. STEFAN, Appellant.

*October 26 — November 15, 1892.*

(*1*) *Pleading: Proof of cause of action inconsistent with that alleged:
Judgment.* (*2*) *Partnership real estate: Right of partner to con-
veyance of specific interest.* (*3*) *Evidence: Release when admissible
though not pleaded.* (*4*) *Duress.*

1. In an action to enforce an alleged trust on the ground that defend-
ant purchased land partly with money furnished by plaintiff and
fraudulently took a conveyance of the whole thereof in his own
name without plaintiff's knowledge or consent, a judgment in favor
of plaintiff for one half of the land cannot be sustained upon find-
ings that the land was purchased by the parties as partners, that
the title was taken in the name of defendant with the understand-
ing that he was afterwards to convey a half interest to plaintiff,
that the land was treated as partnership property, and that a settle-
ment of the partnership affairs whereby plaintiff released his claim
to the land was void — even though the evidence supporting such
findings was not objected to. The facts so found were not embraced
within the issues or consistent with the cause of action alleged.
2. Where, by agreement, the legal title to partnership real estate is
vested in one of the partners, the other cannot compel a convey-
ance to him of his interest therein, without bringing an action for
dissolution and an accounting.
3. Where evidence of a cause of action not set out in the complaint is
introduced by plaintiff without objection, defendant should be
allowed to show a release thereof, although such release was not
pleaded.
4. Evidence of threats by defendant to "make complaint against"
plaintiff and to "send him to state prison" if he did not sign a
release, no offense for which plaintiff could have been imprisoned
being specified, is *held* insufficient to sustain a finding that the
release was procured by duress.

APPEAL from the Circuit Court for *Ashland* County.
The plaintiff, *Kruschke*, alleges, in substance, an agree-
ment between him and the defendant, in September, 1883,
to purchase six lots (describing them) in block 113 of
Vaughn's division of the city of Ashland, then owned by

one Fifield, for $1,800, $1,700 of which was to be paid by the plaintiff and $100 by the defendant, and the title to said lots to be taken and expressed in the deed therefor one half to *Peter Stefan* in fee, and one half in trust for or to the use of the plaintiff. The complaint alleges that the plaintiff furnished to *Stefan* $1,700, as agreed, to make the purchase, title to be taken in the name and manner as before stated; that the defendant, with said money and $100 of his own, purchased and procured a deed of the lots to himself. That they were at the time partners in furniture and undertaking and in the liquor business at said city. That, after the deed had been procured and recorded, defendant repeatedly represented to plaintiff he had procured the same as agreed, one half to the defendant in trust for or to the use of the plaintiff; and the plaintiff relied upon said statements, having confidence in the defendant and believing that he had performed said agreement in all respects as agreed. That, by fraud and contrary to the agreement, said defendant procured said deed to be given for said lots solely in his own name. That the parties continued as copartners until the fall of 1888. That after the discovery of said fraud, about January 1, 1889, the defendant refused to perform the trust as agreed, or to deed one half of the lots to the plaintiff. During the partnership, from the proceeds of their business they erected several buildings upon the lots, which then became and are a part thereof, and rent for a large amount annually, though said real estate was and is in no way connected with the partnership business. That the lots in their present condition are worth about $30,000, and, exclusive of the buildings and improvements put on by the partnership, one half of which belong to this plaintiff, the lots are worth about $20,000. Judgment is demanded for a reformation of the deed to the lots, so that one half shall be held by the defendant in trust for or to the use of the plaintiff, according to the

Kruschke vs. Stefan.

agreement, and that the defendant be compelled to execute his trust and convey to the plaintiff the undivided half of said lots, and for general relief. The answer is a general denial.

Afterwards the plaintiff gave testimony tending to support the allegations of his complaint, the details of which it is not material to state, but in producing such evidence the following colloquy, in substance, occurred between the trial judge and counsel for the respective parties: *Mr. Miles, for defendant:* "It is admitted by the defendant that the plaintiff had an interest in the property up to the 25th of February, 1890, when the settlement was made; and we have never denied it, although the title was in the defendant. Up to this time we considered that the plaintiff had an interest in this property. Whether that was a legal title, or one that could be enforced, I could not say. We reserve our rights in that. We consider that he had no interest in the property." *By the Court:* "It is admitted by the defendant that the plaintiff had an interest in the property up to the time of the settlement of the lawsuit, February 25, 1890. But the defendant reserves the right to question the validity of the plaintiff's title in this action." *Mr. Dufur, for plaintiff:* "Plaintiff objects to any evidence of any settlement or any suit in any amount, for the reason that there is no allegation raising that issue in the answer, it being simply a general denial, and it cannot be proven in this action. The plaintiff denies that they owned this property as partnership property. It was agreed that the deed should be taken one half in trust. That would not make them partners in real estate."

The defendant offered in evidence a complaint duly verified by the plaintiff, *Kruschke,* in an action brought by the present plaintiff against the defendant about the 17th of February, 1890. This action was brought for a dissolution of the partnership, and an account of the partner-

ship dealings and transactions, and for the payment of the liabilities of the partnership and division of the surplus, and prayed for the appointment of a receiver and general relief. It alleged, among other things, that the partnership was formed August 15, 1883, for the purpose of buying real estate and erecting buildings thereon to rent, and carrying on a furniture business, under an agreement that the plaintiff and defendant should each contribute equally to the capital of the business, and share alike any profits and losses; that, pursuant to said contract, the said partnership purchased the following described real estate, to wit (describing the lots in question); that *for convenience in transfers the title to said property was taken in the name of the defendant, Peter Stefan;* that, pursuant to said agreement, the parties erected large and valuable buildings on the said property, and occupied a portion thereof for the furniture business, which was carried on by the firm for a period of about three years and a half, and was then closed out; that the buildings erected by said partnership are leased to sundry parties, and the defendant is receiving large amounts of rent therefrom, estimated at $300 per month. The defendant gave other evidence, showing that the plaintiff knew as early as 1885 and 1886 that the title to this property was in the defendant's (*Stefan's*) name; that he so stated, and that he could not do any business in his own name by reason of difficulty with his wife.

The note and mortgage for $5,000, executed by the defendant to plaintiff October 19, 1883, on the premises in question, was given in evidence against the plaintiff's objection. The defendant testified that *Kruschke* asked him to take a deed for the property in his (*Stefan's*) name; that he had a judgment against him in St. Paul, and that the firm of Meinheim & Kruschke had failed in Duluth, and he was afraid of that judgment; that the object of taking the

deed·in his name was to keep *Kruschke's* wife off, and keep the judgments off that might arise out of the failure of the firm at Duluth.   He testified that when he got the deed of the lots he handed it to *Kruschke* to read; that it was kept in the furniture store in the safe, both parties having the·combination.   The defendant gave in evidence, against the objection of the plaintiff as incompetent and that no foundation was laid therefor in the answer, a certain release, executed by, the plaintiff on the 25th of February, 1890, whereby, in consideration of $1,000, he, *Kruschke*, sells, grants, and conveys unto the defendant, *Stefan*, " all his right, title, and interest in and to any property heretofore or now owned by the firm of Stefan & Co., to wit, *Peter Stefan* and *A. F. Kruschke*," and whereby he released said *Peter Stefan* " from all claims arising out of such partnership, or any other cause whatever, this being intended as a full receipt, release, and settlement of all transactions which have heretofore taken place between said *Peter Stefan* and myself, partnership or otherwise; the said *Kruschke*, for himself, his heirs, etc., covenanting to warrant and defend the said described goods hereby sold to the said party of the second part against all and every person or persons whomsoever claiming by, through, or under me."   And thereupon the defendant rested.

The plaintiff was recalled on his own behalf, and testified that in the previous suit he brought he claimed money that was owing him from the business, back rent, and money collected and in which he had an interest; that he did not suppose the suit included anything else; that he did not understand the suit involved title to the real estate in any way.   The court, against the objection of the defendant, allowed the plaintiff to testify that *Stefan* said if he would not sign the bill of sale or release he would send him to state's prison, and would make complaint against him at Appleton; that he had to sign it; that he did not know for what he

would bring him to state's prison; that he did not understand that instrument involved title to real estate. "He gave me $1,000 for this $2,477 that he owed me. I didn't understand at that time that I was deeding away my property,— giving title to it." The plaintiff also testified that his lawyers were not present when he signed the bill of sale or release to *Stefan;* that he told his lawyers he had settled, but did not say anything to them before that. The defendant, in his testimony, denied that he had said to *Kruschke* that he would put him in prison if he did not make the bill of sale. That he did not know whether he was arrested before or after that,— probably before. That he had been arrested several times. That he (*Stefan*) made no threats at all, and never talked about that matter. That the offer of $1,000 came from one Metzdorf to him, and he met *Kruschke,* and asked him if that was true, and he said, "Yes, I will take $1,000 in cash, and sign a bill of sale;" and "I told him I would give him $1,000 within thirty days; that I had to raise the money. He said it was all right, and I said it was all right; to go into the office, and have the bill of sale drawn, and he did go, and I went into a side room and read it to him." That he heard *Kruschke* had been arrested and taken to Appleton about that time, and he was subpœnaed to go to Appleton to appear against him, but he did not go.

Mr. Miles testified, with regard to the bill of sale, that *Kruschke* and *Stefan* came into his office and said that they had settled all their differences for $1,000, and wanted him to make out the papers; and the parties went into a private room and talked, and the paper was read to *Kruschke,* and he signed it. "*Stefan* did not have the money at that time, and gave his note. *Kruschke* seemed to be in good spirits, and so did *Stefan.* There were no threats made. Everything was apparently as friendly as men could be."

The court found that the purchase of the lots in question

was made substantially as stated in the complaint for $1,800, $1,700 of which was furnished by the plaintiff and $100 by the defendant, he agreeing to refund to the plaintiff one half of the money advanced by him; and that on the 17th day of October, 1883, the said premises were conveyed to the defendant in fee, and the deed was recorded on the 20th of the same month. That the plaintiff and defendant, from August, 1883, until the fall of 1888, were engaged as copartners in the business of furniture and undertaking, which was conducted on the lots in question, and that the lots were treated as partnership property of said firm by the plaintiff and defendant. That the plaintiff received half the rents and profits of the real estate up to February 25, 1890, and resided thereon until the fall of 1888. That there had been valuable improvements made on the lots, and they are of much greater value than at the time of the purchase. That at the time of taking said deed in the name of the defendant it was the understanding of the parties that the defendant should subsequently convey a one-half interest in said property to the plaintiff, as the plaintiff was embarrassed financially; and, fearing that he might be hampered by creditors who had claims against a firm of which he was formerly a partner, it was thought advisable that the deed to said property be retained in the name of the defendant. That the half interest was never conveyed to the plaintiff for the reason that he had some difficulty or family troubles which caused him embarrassment. That October 19, 1883, the defendant made and executed a note and mortgage on the real estate to the plaintiff for $5,000. That thereby the interest of plaintiff in said real estate was expressed; but this note and mortgage was subsequently returned by the plaintiff to the defendant, and the defendant never paid anything thereon. That the plaintiff commenced an action against defendant for the purpose of settling up the partnership

Kruschke vs. Stefan.

affairs, including the real estate before mentioned, which action was settled between the parties, but that said settlement was obtained on the part of defendant by means of threats of arrest and imprisonment of plaintiff, and that it was because of such duress the plaintiff consented to such settlement, for fear that he would be deprived of his liberty if he did not so consent; and that such settlement, which was made February 25, 1890, for that reason is void and of no effect. That it was admitted on the trial by the defendant in open court that prior to said alleged settlement the plaintiff was the owner of one half interest in said real estate. That, while the plaintiff knew the deed to the real estate was taken in the name of the defendant, the same was so taken in good faith on the part of the defendant. That he intended to reconvey said premises upon demand, but has since that time failed and refused to do so, and that said property has been incumbered by him in large sums, but for much less than the actual value of the premises.

As conclusions of law the court found that the plaintiff is the owner of a half interest in said real estate, subject to mortgages executed thereon prior to the commencement of this action; that the defendant should convey a half interest in said real estate, subject to said incumbrances, to plaintiff; and that he is entitled to a judgment herein for one half interest in and to said real estate, subject to such incumbrances, with costs.

Judgment was entered in conformity to the finding. There is nothing in the finding or judgment, however, describing the mortgages executed on the premises by the defendant. From this judgment the defendant appealed.

For the appellant there was a brief by *J. J. Miles*, attorney, and *Tomkins & Merrill*, of counsel, and oral argument by *Mr. Miles* and *Mr. W. M. Tomkins*.

For the respondent there was a brief signed by *John F.*

*Dufur*, attorney, and *Cate, Jones & Sanborn*, of counsel, and oral argument by *Mr. Dufur* and *Mr. D. Lloyd Jones*.

PINNEY, J. 1. The complaint in this action is solely upon the ground that, in fraud of the agreement made between the plaintiff and defendant for the purchase of the premises in question, the purchase price for which was mainly paid by the plaintiff, the defendant, without the knowledge or consent of the plaintiff, procured the title to the entire premises to be conveyed to himself, in fraud of the rights of the plaintiff, whereas it was understood and agreed that it was to be conveyed one half to the defendant and the other half to him in trust for the plaintiff, and that he now refuses to recognize the plaintiff's right in or to the premises, or to convey him his half thereof; and it was claimed that a trust should be implied or held to result from these facts in favor of the plaintiff for an undivided half of the property so purchased, under the provisions of secs. 2077, 2079, R. S., which allow such a trust "where the alience named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the knowledge or consent of the person paying the consideration." And the complaint, in apt and proper language, states a cause of action in favor of the plaintiff under this statute. *Lounsbury v. Purdy*, 18 N. Y. 517, 520.

While the plaintiff alleges in his complaint that he and the defendant were partners at the time in the furniture and undertaking and liquor business, it is alleged that "said real estate was and is in no way connected with the co-partnership business." The plaintiff produced evidence tending to support the allegations of his complaint, but it was clearly proved that at the time of the purchase the title to the property in question was taken in the name of the defendant with the knowledge and consent of the plaintiff, and the court so found, in substance. The com-

plaint in the former action between these parties, brought to wind up and settle the affairs of their copartnership, which was verified by the oath of the plaintiff in this action, was a solemn admission on his part that the title to the property in question was taken in the name of defendant with the plaintiff's knowledge and consent, and in it he alleged that the partnership was formed August 15, 1883, "for the purpose of buying real estate, erecting buildings thereon to rent, and carrying on furniture business" under the agreement therein set forth, and that, "pursuant to said contract, the said partnership purchased" the said real estate (describing it). This evidence, although objected to by the plaintiff, was admitted, and the plaintiff, as well as his counsel, insisted throughout the trial that the property in question was not partnership property, and had nothing to do with the partnership enterprise. The defendant testified that the title to the lots was taken in his name at the plaintiff's request, and produced other evidence to support that contention, and the defendant's counsel on the trial further admitted that the plaintiff and defendant owned the property as copartners, but the title was taken in the defendant's name; so that the court found that it was agreed that the defendant should subsequently convey a one-half interest therein to the plaintiff. It was also found that the lots were treated as partnership property by the plaintiff and defendant, and it appeared that they had been largely improved by the money and funds of the copartnership in erecting buildings thereon, in one of which they carried on business.

The finding, it will be seen, negatived the entire ground for equitable relief upon which the complaint was founded, and found that the deed was taken upon an express parol trust, void under the statute (*Rasdall's Adm'r v. Rasdall*, 9 Wis. 379), unless it be held that the real estate in question was the partnership property of the firm. There was,

therefore, not a case of variance under secs. 2669, 2670,
R. S., but a failure of proof under sec. 2671, "where the
cause of action to which it was directed was unproved, not
in some particular or particulars only, but in its entire
scope and meaning," which the statute declares shall not be
deemed a case of variance within those sections. The cause
of action established by the finding, and upon which judg-
ment was rendered, granting the plaintiff relief, was one
not stated in the pleadings or in any manner included in
the issue. The one set out in the complaint was founded on
fraud and breach of confidence, and the other, upon which
judgment was rendered, rested upon what must be deemed
contractual relations between the parties; and the question
is whether the judgment thus rendered, proof having been
received without objection, ought to be sustained.

There are cases which seem to, and some of which do,
hold that in such case the judgment may be sustained if the
evidence is not objected to at the trial. Many of these cases
are cited in *Forcy v. Leonard*, 63 Wis. 361, but, on examina-
tion, some of them will be found to be cases of mere vari-
ance and not of failure of proof; and others, cases where,
as it was said in *Forcy v. Leonard*, "the relief granted was
consistent with the case made by the complaint." *Flanders
v. Cottrell*, 36 Wis. 564; *Matthews v. Baraboo*, 39 Wis. 674;
*Russell v. Loomis*, 43 Wis. 545; *Cordes v. Coates*, 78 Wis. 642.
In *K—— v. H——*, 20 Wis. 239, and *Eilert v. Oshkosh*, 14
Wis. 586, and other cases, it was held that a party cannot
recover on an entirely different cause of action from that
set out in his complaint, and in other cases that an action
founded in tort cannot, at the trial, be changed into one
founded on contract, and *vice versa*. *Anderson v. Case*, 28
Wis. 505; *Kewaunee Co. v. Decker*, 34 Wis. 378; *De Graw v.
Elmore*, 50 N. Y. 1; *Dudley v. Scranton*, 57 N. Y. 424, 428;
*Barnes v. Quigley*, 59 N. Y. 265, 267.

This case affords a striking example of the impolicy, not

Kruschke vs. Stefan.

to say the impropriety, of the rule allowing a party to sustain a judgment on proof of facts not in any manner embraced in or consistent with the case made by the complaint, and not embraced within the issue. Here were several important issues tried without any reference by way of pleading to the facts out of which they arose in either complaint or answer: (1) Whether the property in question was partnership property, and conveyed to the defendant for partnership purposes; (2) whether the plaintiff had released to the defendant all claim to it; (3) whether this release was procured by undue influence and duress. Under such a practice the important objects of written pleadings are entirely lost sight of, namely, to apprise the parties respectively of the nature and ground of the cause of action and defense, and to show upon what grounds the final judgment was given, and what was adjudicated by it. The subject is considered in the recent case of *Southwick v. First Nat. Bank,* 84 N. Y. 428, where the court pointed out that the proof wholly failed to establish the cause of action alleged, and it was said: "This is not a case where the pleadings can, after the trial, be conformed to the proof, as such an amendment would change substantially the claim of the plaintiff as alleged. This is not a case of mere variance or mere defect (and it was pointed out at the trial), but a case of failure to prove the cause of action alleged in its entire scope. Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action, and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary." The case of *Truesdell v. Sarles,* 104 N. Y. 164, 167, is quite in point, where an equitable action was brought by creditors to set aside a conveyance by a husband through third persons to his wife as fraudulent, but it appeared that it was for a good con-

Kruschke vs. Stefan.

sideration, and that there was no fraudulent intent; and it was held error to refuse to nonsuit the plaintiff, although, as to creditors, the conveyance might have been converted into a mortgage; and that such relief could only be given upon proper evidence in an action where it *was consistent with the case. made by the complaint, and embraced within the issue.* For these reasons we must hold that the judgment appealed from cannot be upheld, and that the defendant is entitled to judgment dismissing it, but without prejudice to such other action as the plaintiff may be advised should be brought.

2. The evidence shows, we think, that the lots in question were partnership property, used and treated as such by the parties, and improved out of partnership funds, the title thereto, by agreement, having been taken in the name of the defendant, really for the uses and purposes of the copartnership. The title was vested just as the parties intended it should be, and, although the property was realty, in the estimation of a court of equity it had been thus converted into personal estate for all partnership purposes, and, with other partnership effects, was held subject to the payment of firm debts and losses, and the return of the capital originally advanced by each of the partners, when the residue, if any, would be subject to division between the partners, as profits; and if it consisted of real estate they would be entitled to hold the legal title as tenants in common. 1 Bates, Partn. § 282, and cases cited; *Bird v. Morrison,* 12 Wis. 138; *Fowler v. Bailley,* 14 Wis. 126; *Roberts v. McCarty,* 9 Ind. 16; *Godfrey v. White,* 43 Mich. 171, 178; *Bopp v. Fox,* 63 Ill. 540; *Martin v. Morris,* 62 Wis. 418; *Foster's Appeal,* 74 Pa. St. 391; *Andrew's Heirs & Adm'rs v. Brown,* 21 Ala. 437; *Shanks v. Klein,* 104 U. S. 18; *Allen v. Withrow,* 110 U. S. 119, 130. The plaintiff, therefore, had no right to call for a conveyance of his interest as a tenant in common of the lots until the

trust fastened upon them for partnership purposes had been fully satisfied. Until then the legal title must remain where the parties, by mutual consent, have vested it, and therefore the remedy of the plaintiff, if any, was only by action to dissolve the copartnership and for an accounting and proper application of its assets. 2 Bates, Partn. § 910. The general rule is that an action cannot be maintained by one partner against his copartner for a partial division of the assets of the firm, and this case does not fall within any recognized exception to the rule.

It is contended in support of the judgment that, where the title to partnership property has been wrongfully or improperly vested in one copartner, the other may maintain an action to have the legal title vested in all the partners according to the true intent of the parties and its equitable ownership, without bringing an action for dissolution and winding up the affairs of the firm. The cases of *Traphagen v. Burt*, 67 N. Y. 30, and *Davis v. Davis*, 60 Miss. 615, are relied on. Both of these were cases where real property had been acquired with partnership funds and for partnership purposes, but the copartner conducting the transaction, without the knowledge or consent of the other partner, had procured the title to be conveyed to him which should have been conveyed to both, and in these cases it was held that the implied and resulting trust arising out of such breach of faith might be enforced without bringing a suit for dissolution and accounting. But these cases are clearly distinguishable from the present. Here there has been no violation of confidence or breach of faith by the defendant in taking the deed of the lots in question in his own name. The court finds that it was so taken in good faith, and was so taken for partnership purposes; and the lots became a part of the property and assets of the firm. This objection furnishes an additional, and, as it seems to us, an incontestable ground for holding that the

plaintiff's complaint should be dismissed, but without prej-
udice to another action, should he elect to bring it.
*Learned v. Bishop*, 42 Wis. 470.

3. The release given in evidence against the plaintiff's
objection is, on its face, full and complete, and conveyed
to the defendant all the plaintiff's right, title, and interest
in and to any property theretofore or then owned by the
firm of Stefan & Co., and released the defendant from all
claims arising out of the partnership transactions, or for
any other cause whatever. Where a release is offered in
evidence without having been pleaded, the answer cannot
be amended at the trial so that it can be received. *Sher-
necker v. Thein*, 11 Wis. 556. But where, as in this case,
the court received evidence of the cause of action released,
without its being set out in the complaint, without objec-
tion on the part of the defendant, and to which he had
never had a chance to plead, it would seem to be just and
proper to receive the release of such cause of action in
evidence, for, as to the new cause of action, the defendant
has had no opportunity to plead, and ought not to be held
restricted in proof by his answer to a cause of action
which the plaintiff has wholly failed to prove.

4. The plaintiff, in rebuttal, was allowed, against the de-
fendant's objection, to give evidence, the substance of which
has been stated, to show that the release was procured by
threats of arrest and imprisonment of the plaintiff, made
by the defendant, and that it was because of duress that
the plaintiff consented to the alleged settlement, fearing
that if he did not, he would be deprived of his liberty, and
that, therefore, the release is void; and the court found in
favor of this defense. The evidence is not sufficient to sus-
tain this finding, or to impeach the release in question.
The statements of the plaintiff on this subject are wholly
denied by the defendant, and his denial is strongly sus-
tained by the testimony of Mr. Miles, who drew the release

and witnessed its execution, and by testimony tending to show that the parties were brought together through the intervention of a Mr. Metzdorf, who told the defendant that the plaintiff would take $1,000 in full as a settlement; and the defendant, on meeting plaintiff, asked him if that was so, and he said he would sign a bill of sale for that sum, whereupon they proceeded to the office of Mr. Miles and arranged the matter, the plaintiff taking the defendant's note for the amount. The alleged threats did not specify any cause known to the law for depriving the plaintiff of his liberty, or intimate that he had been guilty of any legal offense, and were not such as to have an undue influence on a mind of reasonable firmness, or to prevent the exercise of the plaintiff's free will in making the settlement. *Brown v. Peck*, 2 Wis. 277, 278. The evidence furnishes no ground for holding that the plaintiff was unduly influenced, or his free will overpowered, by the alleged threats.

For these reasons the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the plaintiff's complaint without prejudice to another action.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded accordingly.