## COATS vs. TAFT and others.

A deed need not show on its face the limits or quantity of the real estate granted, if it refers to certain known objects by which such limits may be readily ascertained.

Where a deed described the land conveyed therein, as "a part of the east half of the southwest quarter of section 5, town 3, range 8, beginning on the south line of said section 5, on the east side of the bottom land of the creek, *far enough up the bank to raise a nine foot head to a mill* standing by the bridge on section 8, thence up the bottom land one hundred rods, to include all the bottom land on both sides of the creek, within the above mentioned bounds:" *Held*, that the deed conveyed the bottom lands on each side of the creek for the distance of one hundred rods up the same from the place of beginning, which would be flowed by a nine foot head of water at the mill therein referred to, but did not grant a right to flow any lands of the grantor lying beyond the distance of one hundred rods in that direction, although such lands would be flowed by a nine foot head of water at the mill.

APPEAL from the Circuit Court for *Green* County.

This was an action to recover damages under the mill dam law. The complaint shows that the plaintiff, in 1856, conveyed certain lands to the defendants *J. L. & S. C. Taft*, by the following description: "part of the east half of the S. W. qr. of section 5, town 3, range 8, beginning on the south line of said section 5, on the east side of the bottom land of the creek, far enough up the bank *to raise a nine foot head to a mill* standing by the bridge on section 8, thence up the bottom land one hundred rods, to include all the bottom land on both sides of the creek within the above mentioned bounds;" and alleges that the dam maintained by said defendants has caused the water of said stream to overflow certain land of the plaintiff, lying above the distance of one hundred rods up the creek from the south line of said section, for which injury the plaintiff claims compensation, according to the statute in such case provided.

The defendants *J. L. & S. C. Taft* demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. "1st. It appears upon the face of the complaint, that the plaintiff sold and conveyed to these defendants a part of the land in the complaint first described, and enough so that they, the defendants, could raise by a dam a nine foot head of water for their mill in said complaint mentioned; but it is not alleged that a greater head, or even so great a head of water as nine feet, is or has been raised or maintained. 2d. It is not alleged in the complaint that the defendants have, by the erection and maintenance of said dam, overflowed any lands belonging to the plaintiff, which they have not a right to overflow, by virtue of said deed from the plaintiff to the defendants."

The demurrer was overruled by the circuit court, and the defendants appealed.

*Gardner & West*, for appellants. [No argument on file.]

*Bingham & Bryant*, for respondent:

The terms of the conveyance to the defendants, as set forth in the complaint, show no contract whatever in regard to the land for injury to which the plaintiff complains. To presume that the conveyance was intended to convey all the

June Term,
1860.

COATS
v.
TAFT et al.

land on the east half of the S. W. qr. of section 5, that a nine foot head at the dam would cause the water to cover, is to presume far more than the language of the complaint describing the land thus conveyed, will warrant. If such was the intention of the parties to the conveyance, the defendants must show it by way of defense. If the parties supposed, at the sale, that a nine foot head at the dam would not cause the water to flow up more than 100 rods from the south line of the section, and the defendants claim the advantage of such mistake in calculation, they must show the mistake. The complaint, taken as true, shows that the plaintiff is entitled to compensation for the injury to his land.

July 30.	*By the Court*, DIXON, C. J. According to the maxim *id certum est quod reddi certum potest*, there is no doubt or uncertainty about the extent, quantity, or boundaries of the tract of land which the plaintiff, in the complaint, alleges that he has heretofore conveyed to the defendants *John L.* and *Sweeton C. Taft*. The complaint alleges that the land conveyed is described in the deed "as a part of the east half of the southwest quarter of section five (5), town three (3), range eight (8), beginning on the south line of said section five (5), on the east side of the bottom land of the creek, far enough up the bank to raise a nine foot head to a mill standing by the bridge on section eight, thence up the bottom land one hundred rods, to include all the bottom land on both sides of the creek within the above mentioned bounds, be the same more or less." It appears from the complaint that there is a creek, known as a branch of Sugar river, running through the half quarter section mentioned, and that it passes thence through a portion of the adjoining section eight, and that near by, on section eight, there is a mill site, upon which the defendants *Tafts* have erected a dam and put in operation a mill. It seems very evident to us, that the several matters which are thus alleged to be contained in the deed, are matters of description merely, used by the parties for the purpose of ascertaining the location, extent and boundaries of the land conveyed; and that, when construed with reference to these well known external facts and circumstances, the deed is

neither obscure nor ambiguous.  We do not understand the
law to require that a deed should, on its face, ascertain the
limits or quantity of the estate granted, or the particular
property conveyed; but that it will be sufficient if it refers
to certain known objects or things, and provides definite
means by which the same may be readily ascertained and
known.  Thus, in the case of *Owen vs. Thomas*, 3 Mylne &
Keene, 353, an agreement in writing for the sale of a house,
which did not, by description, ascertain the particular house,
but referred to the deeds as being in the possession of a cer-
tain person named in the agreement, was held sufficiently
certain, inasmuch as it appeared on the face of the agree-
ment that the house referred to was that of which the deeds
were in the possession of the person named, and consequent-
ly might be easily ascertained before the master.  In this
case, the several expressions of the deed concerning the land
must be regarded as descriptive, and were introduced for the
purpose of identifying the land and defining its limits and
quantity.  This is as true of the phrase "beginning on the
south line of said section five, far enough up the bank to
raise a nine foot head to a mill standing by the bridge on
section eight," as of any other of them.  The idea was to
get at, and state on the face of the deed, some fixed and def-
inite starting point in the boundary of the land conveyed.
The line of the section, the creek, the bank, the bridge and
the mill, were contiguous, well known objects, by means of
which, and of a measurement for a nine foot head of water,
this point could be readily ascertained.  This method of ar-
riving at and stating it, rendered the point as definite and
certain as it would have been if the measurement had first
been made, and the place marked by a monument mentioned
in the deed.  This point being established, the residue of
the description seems perspicuous enough.  The evident
intention was to convey all the low lands on either side of
the creek, for the distance of one hundred rods up the same
from the place of beginning, which would be flowed by such
a head of water.  The parties undoubtedly contemplated a
raising of the waters of the creek to this height.  This, when
done, would constitute the water's edge the bounds of the

June Term, 1860.

land on each side of the creek. But, whether they contemplated this or not, the deed would not on that account be void, for the reason that the boundaries, or what would have been the water's edge, were capable of ascertainment by other means. Construing the deed most strongly against the grantor, the one hundred rods would be measured from the point of commencement, in a straight line to, and terminating at, the real or imaginary water's edge at that distance up the stream. Thence it would be bounded by a straight line drawn parallel with the south line of section five, to the same real or ideal boundary on the opposite side of the creek, down which it would proceed to the point of intersection with the line of the section, and thence by the section line to the place of beginning. This, it appears to us, was the manifest meaning and intention of the parties, to be gathered from the language used. Believing as we do, that the language about the "nine foot head" was introduced for the purpose of description merely, it, of course, repels any presumption, at this stage of the action, that it was intended or used for the purpose of granting to the defendants any right to flow the lands of the plaintiff above the distance of one hundred rods, as specified in the deed.

The order of the circuit court overruling the demurrer, must therefore be affirmed, with costs.