JOHN C. FREEMAN, as Receiver, etc., Appellant, *v.* HUGH J. GRANT, Sheriff, etc., Respondent.

In an action to recover damages for the alleged unlawful taking and conversion of certain goods it appeared that prior to the execution of an assignment for the benefit of creditors, the defendant, as sheriff had, under two executions against the assignors, levied upon their goods, and a subsequent sale of part of them, after payment of the execution left a surplus. Subsequent to the assignment and while the goods unsold remained in defendant's possession, other executions came into his hands under which he claimed the right to sell a sufficient quantity of the goods remaining to satisfy said executions; the assignee without admitting the defendant's claim, in order to obtain possession of the goods, made an arrangement with the sheriff in pursuance of which he paid to the latter under protest a sum sufficient, with the surplus in his hands, to make up the amount of the other executions, and defendant thereupon released his levy. *Held*, that the proof failed to sustain the allegations of unlawful taking, and there was no unlawful conversion of the surplus; that the arrangement operated to discharge any cause of action for conversion and to substitute in its stead one for money had and received.

At the close of plaintiff's case, his counsel asked the court to allow the complaint to be amended so as to conform to the facts proved. This was objected to and refused. *Held*, no error; as the effect of the amendment would be to allow a recovery upon an entirely different cause of action and this may not be done against an objection.

After the court had decided to dismiss the complaint, plaintiff's counsel asked the court to be permitted to withdraw a juror, in order to make a motion at Special Term to amend the complaint, which was denied. *Held*, no error; that it was discretionary with the court and the manner of its exercise would not be reviewed in this court.

(Argued December 2, 1891; decided March 8, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 14, 1890, which affirmed a judgment dismissing plaintiff's complaint on the trial at the Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John B. Green* for appellant. The court had power by the express provisions of the Code to grant the plaintiff's applications. (Code Civ. Pro. §§ 539, 540, 723, 3343; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 137; *Clemence* v. *City of Auburn*, 66 id. 334.) If the sheriff paid the surplus over and at once seized it again, there was an unlawful taking and conversion; if he did not pay it over at all, but kept it and applied it to subsequent executions, then there was an unlawful conversion after a lawful taking. (*Minick* v. *City of Troy*, 83 N. Y. 514; *Sheridan* v. *Hopkins*, 11 Wkly. Dig, 398; *Tiffany* v. *Lord*, 65 N. Y. 310.) The error of the court in respect of the surplus is palpable and entitles the appellant to a reversal of the judgment and a new trial. (Code Civ. Pro. §§ 385, 539, 540, 541, 723.)

*Wales F. Severance* for respondent. The cause of action must be made out as alleged in the complaint, where there is an objection to the proof during the trial. (*Southwick* v. *F. N. Bank*, 84 N. Y. 420; *Neudecker* v. *Kohlberg*, 81 id. 296.) The court did not err in refusing to allow an amendment to the complaint on the trial. (Code Civ. Pro. § 723; *Phincle* v. *Vaughn*, 12 Barb. 215–217; *Hendricks* v. *Decker*, 35 id, 298–302; *Dennis* v. *Snell*, 54 id. 411–414; *Richtmeyer* v. *Remsen*, 38 N. Y. 206–209; *Smith* v. *City, etc.*, 37 id. 516–521; *N. Y. Ice Co.* v. *N. W. Ins. Co.*, 23 id. 357–362; *King* v. *Barnes*, 107 id. 645, 647; *Barnes* v. *Quigley*, 59 id. 265–268; *Dudley* v. *Scranton*, 57 id. 424; *Bernhard* v. *Seligman*, 54 id. 661, 662; *Ross* v. *Mather*, 51 id. 108; *Degraw* v. *Elmore*, 50 id. 1; *Arnold* v. *Emerson*, 62 id. 508; *McMichael* v. *Kilmer*, 76 id. 36–40; *Clinton* v. *Strong*, 9 Johns. 370;

*Harmony* v. *Bingham*, 12 N. Y. 99 ; *Bowns* v. *May*, 120 id. 357–360 ; *Briggs* v. *Boyd*, 56 id. 289 ; *Stenton* v. *Jerome*, 54 id. 480 ; *Scholey* v. *Mumford*, 60 id. 498 ; *Southwick* v. *F. N. Bank*, 84 id. 420 ; *Messenger* v. *F. N. Bank*, 48 How. Pr. 542.)

PARKER, J. The complaint alleged the making of a general assignment for the benefit of creditors by the firm of Kaughran & Barrett to Miles O'Brien ; an acceptance of the trust and the taking possession of the assigned property by the assignee ; the plaintiff's subsequent appointment and qualification as receiver of the estate of Kaughran & Barrett, and the delivery of possession thereof by Miles O'Brien to him pursuant to the order of the court.

It further averred that during the time said assigned property was in the possession of O'Brien, the assignee, the defendant in this action, as sheriff of the city and county of New York, wrongfully and unlawfully took from the possession of said O'Brien and carried away large quantities of said goods and property so held and owned by said O'Brien as such assignee, of the value of $19,385.12, against the protest of said assignee, and converted the said property to his own use to the damage of the said assigned estate and the plaintiff in the above amount.

The answer put in issue the allegations of the complaint, and by appropriate averments justified the acts and things done by the defendant as being in the line of his duty as sheriff.

The evidence adduced on the trial failed to support the allegations of the complaint respecting the wrongful taking of any goods from the possession of the assignee by the defendant, and its admission was objected to by defendant's counsel on the ground that it was not material or relevant to the issue. The objection was not sustained, and from the testimony resulting it appears that, prior to the execution of the assignment, the defendant, as sheriff, levied upon and took possession of certain goods belonging to Kaughran & Barrett under two

executions aggregating about forty thousand dollars, and that a subsequent sale of part of the goods under such process resulted in a surplus of $10,804.44. While the sheriff was in possession of the property levied on, and subsequent to the assignment and the assignee's acceptance of the trust, the defendant received other executions aggregating about nineteen thousand dollars, and he asserted to the assignee the right to sell a sufficient quantity of the goods remaining in the store to secure the balance required to satisfy such executions. Without conceding the sheriff's position to be correct, the assignee believing, as it is alleged, that the assigned estate would be benefited by a sale conducted by him rather than the sheriff, suggested a plan which he intended should permit him to take possession of the goods and sell them, and at the same time preserve for the benefit of the assigned estate such sum of about nineteen thousand dollars, provided the possession of the sheriff should prove to be without support in law. The assignee's proposals ripened into an arrangement by which the sheriff was permitted to retain the surplus, which exceeded ten thousand dollars, and in addition the assignee paid over to him about nine thousand dollars, making total moneys then in the hands of the sheriff equal to the amount due on the executions which he had received subsequent to the assignment, but under which he had levied on goods forming a part of the assigned estate. The assignee protested against the defendant's claim of right to sell the goods upon which he had levied, and insisted in doing that which he did, he did not intend to relinquish the claim that the estate was entitled to the possession of the goods then in the store; that the money was intended by him as a substitute for the goods upon which the sheriff had levied, and was a deposit made for the purpose of procuring a release from the levy. Immediately thereafter the sheriff released the goods from the levy and the assignee took possession, since which time the defendant has in no way interfered with any portion of the assigned estate. It is apparent, therefore, that the allegations of conversion of goods had no support in evidence, for those which the defendant disposed

of and caused to be removed were rightfully sold under execu-
tions issued and levied before the assignment, and the legality
of his action in that respect is not controverted.

But the plaintiff insists that there was a conversion of the
surplus by the defendant; that his complaint was broad enough
to embrace it; and, therefore, the dismissal of the complaint
was error.

While the surplus came properly and lawfully into the pos-
session of the sheriff pursuant to the sale under executions
rightfully levied, still after their satisfaction he had no right
to retain it, as it formed a part of the assigned estate, and had
the assignee demanded it, its continued retention by the
defendant would have been wrongful and would have sup-
ported an action of conversion. But the arrangement between
the assignee and the sheriff operated to do away with that
cause of action and to substitute in its stead one for money
had and received. This conclusion is required by the testi-
mony of the counsel for the assignee who conducted for him
the negotiations with the sheriff which resulted in his retention
of the surplus, and a further payment to him of about nine
thousand dollars by the assignee to induce a release of the levy
on a portion of the assigned estate. He testified : " My recol-
lection is not very distinct about what did occur; all I know
was there were certain attachments or executions that had been
issued and that the sheriff was in possession under those, claim-
ing adversely to the assignee; and the assignee, under my
advice, ascertained the amount of these liens or claims against
the property, and after ascertaining those, we went to the
sheriff's office with a view of seeing if some arrangement could
be made by which he would allow the assignee to sell and then
have these liens paid out of the proceeds; and as the result of that,
without desiring in any way to determine the question of the
validity of the liens, we entered into an arrangement by which
a stipulation was drawn — the fund or moneys were to be
taken and put in the place of the property.   *   *   *   My
recollection is that the sheriff said : Here is so much money ;
whether he took it in the shape of a check or whether there

was money passed I can't state; but he said I have got that amount of money belonging to the assignee; the assignee went in and made a demand for it, and he said, I have got that surplus over and above these judgments, the Claflin and Kaughran judgments; the sheriff then said he would; he said: I will pay that over to you; then we went into the arrangement of what we were going to do by reason of the levies he had made on the Broadway store, and he stated that unless some arrangement was made by the assignee to release those levies there by a deposit of money in lieu of the property, that he was going to sell out the property of the Broadway store. * * * My recollection about it is, we went there and asserted that the sheriff hadn't any right to keep the money; and he said on his part that he had this money in his hands; and he said: I have got a levy upon the Broadway store; it may be that the proceeds there will be sufficient to satisfy these attachments and executions; if so, the surplus will belong to the assignee; at that time the sheriff was in possession, and the assignee was of opinion that it was for the interest of the estate to get it out of the hands of the sheriff; and we tried to get the sheriff to release the property, and he wouldn't do it without getting the money, and we entered into this arrangement. * * * I will not say as a matter of fact that he asserted a right against the surplus of this money that he had in his hands; he never positively refused in the sense of saying he would not pay it over; he said, this money is here, and if I make the executions good out of the property I have got to recognize your demand.

"Q. That is, he said if you took the money he would have to take more property? A. Yes.

"Q. And so far as simply the question of holding that money or getting more property, you told him to hold the money and not take more property? A. I told him we would enter into this arrangement."

It is quite apparent from this evidence that the sheriff was in possession of the goods belonging to the assigned estate under certain executions, and threatening to make the amount

due thereon out of such property; that to prevent a sale by him and secure for the assignee immediate and undisputed possession, the counsel for the assignee proposed the arrangement which was finally entered into. In order to carry it out the assignee borrowed the sum of nine thousand dollars and paid it over to the sheriff, who was further permitted to retain the surplus to make up the balance which he required as a condition precedent to a surrender of possession of the goods on which he had levied. Had the surplus not been taken into account in making up the nineteen thousand dollars, the assignee would have been obliged to raise and pay over an equal amount in order to accomplish the purpose which he had in view. It seems to be clear, therefore, that whatever may have been the rights of the assignee against the sheriff as to surplus prior to the agreement, that it was the intention of the parties and the legal effect of their action to treat the surplus and the nine thousand dollars borrowed by the assignee as paid over to the sheriff to effect a common purpose, to wit: A surrender of possession to the assignee of goods out of which the sheriff threatened to make the amount due on certain executions. The sheriff had no right to demand this money nor to retain possession of the goods under the levy made after the assignment, and the assignee, by an appropriate action, might have obtained an adjudication setting aside the levy and requiring the sheriff to surrender possession of the goods to him, but believing the course adopted to be for the best interest of the estate, he paid the money under protest and in order to obtain possession. The payment thus made was not voluntary, but compulsory, and the law implies a promise to repay, the remedy being an action as for money had and received. (*Clinton* v. *Strong*, 9 Johns. 370; *Harmony* v. *Bingham*, 12 N. Y. 99; *Briggs* v. *Boyd*, 56 id. 289–293; *Bowns* v. *May*, 120 id. 357–360.)

The cause of action alleged in the complaint, however, was not for the recovery of money involuntarily paid to the defendant, but for the wrongful taking by the defendant from the assignee O'Brien of " dry goods, fixtures, attachments and

personal property," and the testimony presented did not tend to establish it. As the evidence adduced pointing to a different cause of action was seasonably objected to, it was not error for the court to dismiss the complaint. (*Southwick* v. *First National Bank*, 84 N. Y. 420.)

At the close of the plaintiff's case his counsel asked the court to so amend the complaint as to conform to the facts proved. The request was denied. As appears from the observations already made, the effect of granting the motion would have permitted a recovery upon an entirely different cause of action from that set forth in the complaint, and that may not ordinarily be done on the trial against the objection of the other party. (*Barnes* v. *Quigley*, 59 N. Y. 265; *McMichael* v. *Kilmer*, 76 id. 36; *Arnold* v. *Angell*, 62 id. 508.)

Subsequently, and after the court had decided to dismiss the complaint, plaintiffs' counsel asked to be permitted to withdraw a juror, so as to permit a motion to be made at Special Term to amend the complaint. This request was also denied. The disposition of such an application rests so largely in the discretion of a trial court that the manner of its exercise after an affirmance by the General Term will not be reviewed here.

The judgment should be affirmed.

All concur, except POTTER, J., not voting.

Judgment affirmed.