GATES, Respondent, vs. PAUL, Appellant.

*February 4—March 21, 1903.*

*Pleading: Amendment of complaint: Changing cause of action: Contract for dealing in lands:* Lex loci: *Jurisdiction: Action relating to lands in another state: Express trust: Several writings: Description of land: Joint purchase of land: Fraud: Remedies: Equity.*

1. It is within the judicial power of a trial court to permit a complaint to be amended upon the trial of an action though the effect thereof be to change the cause of action, so long as the form of action be not changed from one on contract to one sounding in tort, or from one at law to one in equity, or *vice versa.*

2. Within the limits above indicated and the range of sound judicial discretion there is no limit to the power to allow a complaint to be amended in furtherance of justice, either before the trial or at the trial, or after the trial before the controversy shall have been closed by the final judgment or decree.

3. Secs. 2669, 2670, Stats. 1898, relating to amendments of pleadings curing variances between the same and the proof, do not limit the power of amendment under sec. 2830, nor does the power conferred by the latter section limit the power under sec. 2829, to disregard errors in pleadings and proceedings not affecting the substantial rights of the adverse party.

4. The limitation of the power of amendment marked by the language of sec. 2830, Stats. 1898, "when the amendment does not change the claim or defense," does not preclude any amendment to a complaint which may be granted in such a way as

not to prejudice the substantial rights of the adverse party, that does not in effect depart from the general scope of the controversy giving rise to the litigation and which does not change the form of the action.

5. A complaint based on a contract for dealing in lands, alleging that such contract was partly verbal and partly in writing and to be executed in a foreign state, and further pleading the law of such state as permitting a binding contract of that character to be made, is good as to a demurrer for insufficiency in that under the laws of this state a contract to deal in real estate or creating or transferring any interest in real estate other than that of a leasehold interest for not exceeding the term of one year, or a trust in land, must be in writing.

6. The courts of this state have jurisdiction of an action *in personam* though it may indirectly relate to lands in a foreign state or country by seeking to compel the defendant to convey such land or some interest therein to the plaintiff.

7. It is not necessary, under the statute requiring an express trust relating to lands for the beneficial interest of any person or persons to be created in writing fully expressing and clearly defining the trust upon the face thereof, that the instrument shall consist of a single paper or formal instruments of any kind. It is sufficient if there be several papers relating to the subject, regardless of their form, which together satisfy the calls of the statute.

8. A description of real estate, in an instrument conveying the same to be held in trust, is sufficient which describes the subject of the trust with such certainty as to satisfy the essentials of a description in a deed of conveyance or other instrument transferring or creating an estate in land.

9. A general description of land in a deed conveying the same, or in any other instrument conveying or creating an estate in land, which points out the subject thereof with reasonable certainty, is sufficient as to such description though evidence *aliunde* the instrument may be necessary to determine definitely the particular descriptions of land.

10. If a person agrees with another to purchase land on joint account, each to bear a proportionate share of the cost of the property and to have a corresponding interest therein, and in the course of his operations under the contract takes a secret advantage to himself over his associate by taking the title to the property purchased in his own name and then transferring the same to such associate, charging to and collecting from him a greater proportion of the cost of the property than his share thereof, such other paying the same in the reasonable

belief that the amount paid is not more than such share, the latter may, upon discovering the facts, unless precluded by the doctrine of estoppel *in pais*, at any time within the period of the statute of limitations applicable to the matter, sue such person at law for his damages, or rescind the transaction and sue to recover all the money paid, or sue in equity for a rescission of the transaction with an incidental accounting, or sue in equity for an accounting only.

11. In the circumstances above stated, if the breach of faith spoken of becomes incidentally involved in a suit presenting for adjudication a controversy relating to the general subject of the operations between the parties under their contract, so that in order to do complete justice between them it is necessary to adjudicate their rights as to the incidental matter, that may properly be done.

12. If a person sues another in good faith in equity and fails to establish facts entitling him to relief within the power of a court of equity to give as a primary matter, but establishes facts within the general scope of the controversy involved in the litigation, entitling him, if the suit were at law, to legal relief, the court may properly refuse to dismiss the suit, and may exercise its jurisdiction to settle the rights of the parties before it regardless of the form of the action.

[Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for La Crosse county: Chas. M. Webb, Judge. *Modified and affirmed.*

The cause of action set forth in the complaint at the outset was for the dissolution of a partnership and an accounting. The substance thereof was as follows: January 1, 1895, plaintiff and defendant made an agreement, partly verbal and partly written, for the purpose of buying timber lands of various sorts and dealing in the same in the states of Florida and Georgia. By the terms of such agreement plaintiff bound himself to contribute the special knowledge which he had respecting lands and the proper manner of selecting and acquiring the same safely and handling the property profitably in the states mentioned, such services to be deemed equivalent in money to the value of one sixth of the capital required in prosecuting the partnership enterprise, and defendant bound himself to furnish the cash capital. It was

agreed that the title to the lands should be vested in the defendant and that the net avails thereof should inure to his benefit and that of the plaintiff in proportion to their contributions to the partnership capital. By the laws of the states mentioned it was competent to make a contract of the nature mentioned, to establish the same partly by parol and partly by written evidence, and to charge the person holding the legal title to lands purchased in the manner contemplated by such contract as a trustee thereof for his associate or associates according to their agreed interest therein. Lands described in the lists attached to the complaint and referred to as A, B, and D, and other lands not necessary to mention, were acquired under said agreement, the title thereto being vested in the defendant. The cost thereof was fifty cents per acre. The first purchase, called the A lands, consisted of 121,674.91 acres; the second, called the B lands, consisted of 9,863 acres; the fourth, called the D lands, consisted of 26,950 acres. Defendant now denies the partnership agreement, refuses to advise with plaintiff respecting the property or to share with him any of the benefits thereof, or to recognize him in respect thereto in any way. Defendant has conveyed the property to the East Coast Lumber Company, of the stock of which he is the principal owner. Through such corporation he is handling the lands to the exclusion of plaintiff from any interest therein or in the profits thereof. The complaint closed with the usual prayer for relief in a winding-up suit respecting partnership dealings in lands where the title is vested in one of the parties.

After the evidence was all in the complaint was amended against objection of defendant, by adding after the allegations respecting the A lands the following:

"And the plaintiff alleges as to said last-mentioned tract of land, that the title thereto was procured and caused to be conveyed to said defendant by this plaintiff upon an agreement in writing, that said defendant should pay a specific sum, to wit: fifty-seven thousand four hundred ninety-eight

($57,498.00) dollars for five sixths thereof, the remaining one sixth of the consideration to be paid and supplied by this plaintiff, and that this plaintiff was to have and retain one-sixth (1–6) interest in said land; and the plaintiff did pay for and supply one sixth of the consideration."

The answer put in issue all the allegations of the complaint. It contained allegations respecting the A lands to the effect that the same were purchased through the efforts of plaintiff and under an agreement that he should have $5,000 for his services in the matter, and that the same was fully paid before the commencement of this action.

The court found that plaintiff and defendant, being both residents of the state of Wisconsin, the former possessed of special knowledge of the business of dealing in timber lands in the states of Florida and Georgia, and the latter being a manufacturer of lumber and desirous of acquiring timber lands in such states for that business, entered into negotiations for the acquirement of timber lands in such states with a view to manufacturing the timber into lumber and dealing therein for profit, whereby, in 1895, under a written agreement to the effect that an undivided one-sixth of the lands obtained should belong to plaintiff and five sixths to defendant, they acquired the A lands mentioned in the complaint, defendant paying $57,200 as five sixths of the purchase price therefor and plaintiff a proportionate amount for the balance of such price; and that the title to the lands was taken in the name of the defendant, in trust, however, as to a one-sixth interest, for plaintiff. Defendant had associates in the matter who were not parties to the contract between him and plaintiff. It was contemplated that a corporation would be formed, all the lands turned over to it, and the stock thereof distributed to all persons interested according to their equitable interests. In April, 1895, plaintiff and defendant acquired another tract of land described in the complaint as the D lands, the same to be handled for the joint benefit of the par-

ties to the transaction the same as the A lands. In this case the title to the lands was first vested in plaintiff. He conveyed the same to defendant. The agreement as to these lands was in writing. Under such agreement the parties were to be beneficially interested in the same proportions as in the case of the A lands. The negotiations aforesaid further resulted in the purchase of lands designated in the complaint as the B lands. In such purchase plaintiff was allowed for his services the sum of $466.50, the same being deducted from the purchase price by defendant and retained to be paid to plaintiff, but he has not paid the same. In December, 1896, defendant caused a corporation to be formed known as the East Coast Lumber Company, the capital stock of which was fixed at $500,000. Defendant holds a majority of such stock. The corporation was organized to take the title to the lands in question and manufacture the timber thereon into lumber. Prior to the commencement of this action the A lands were transferred to such corporation, but whether the D lands were so conveyed does not appear definitely from the evidence. The allegations of the complaint as to a partnership agreement between the parties is not sustained by the evidence. Before the commencement of this action defendant denied plaintiff any rights whatever in the lands or the stock in the corporation representing the value of the lands.

As conclusions of law the court decided that at the date of the conveyance of the A and D lands to the defendant he became the trustee of the title thereto for the plaintiff of one sixth; that plaintiff was entitled to a credit of $298 on account of expenditures in the purchase of such lands and the further sum of $466.50 on account of the purchase of the B lands; that plaintiff was entitled to recover from defendant such portion of the stock held by him in the East Coast Lumber Company as would equitably represent a one-sixth interest in the A lands; and in case of its appearing that the D lands have been conveyed to the corporation, he is entitled to such

an amount of such stock as will equitably represent his interest therein; that a reference should be had to ascertain and report, first, the amount of money defendant has expended for taxes and other expenses on account of the A and D lands since the same were purchased and the credits plaintiff is equitably entitled to on account of profits received by defendant from the property; second, to ascertain the number of shares of stock in the corporation mentioned, which under all the circumstances should be apportioned to a one-sixth interest in the A lands, and also such amount as should be apportioned to the D lands should it appear that such lands have been conveyed to the corporation; third, to inquire and report the circumstances respecting the dealings of the corporation in the A and D lands and the net profits it has received therefrom; fourth, to ascertain and report the situation of the D lands as regards whether they have been conveyed to the corporation or not. An interlocutory judgment was ordered adjudging the rights of the parties accordingly and ordering a reference to ascertain the facts required in order to enable the court to enter a final decree. The appeal is from the interlocutory judgment.

For the appellant there was a brief by *Woodward & Lees* and *Higbee & Bunge,* and oral argument by *G. M. Woodward* and *E. C. Higbee.*

For the respondent there was a brief by *Geo. H. Gordon,* attorney, and *F. C. Winkler* and *M. A. Hurley,* of counsel, and oral argument by *Mr. Winkler.*

MARSHALL, J. Counsel for appellant insist that the court erred in allowing the amendment to the complaint. The scope thereof, as intended by respondent's counsel, as understood by counsel for appellant, and as viewed by the court as well, was intended to change the cause of complaint by eliminating therefrom the element of partnership without changing the scope of the controversy set out as regards the pe-

cuniary results sought, so· as to warrant relief in that regard upon the theory that an express trust in lands was created respecting the property involved in the suit, instead of a partnership with an incidental trust in lands. The cause of action in the broad sense of the term was not intended to be and was not in fact changed, either as regards form or the general scope of the controversy involved, other than the elimination therefrom of the partnership element. It was in equity originally and remained so notwithstanding the amendment. That neither worked a change in the form of the action as regards whether legal or equitable, nor materially changed the nature of the recovery necessary to vindicate the plaintiff's rights. At first, under a certain state of facts, respondent sought to recover as a wronged partner a specified interest in property, and to terminate his relations to the defendant in respect thereto. In the end he sought to obtain the same relief as regards property rights and to close up the identical subject-matter of controversy which led to the litigation and was the sole ground thereof, by substituting as the primary purpose of the suit the establishment of the relations of trustee and *cestui que trust* between him and appellant, and the winding up of such relations, for that of partnership relations and the winding up thereof. The result was to drop out the primary matter, the subject of establishing a partnership contract and a dissolution thereof, and substitute in its place the establishment of a trust in land and a termination of the trust. In either case the situation of the real estate and a recovery of an interest therein by the plaintiff was the real substance of the controversy.

It is insisted that the amendment worked a change in the plaintiff's claim, contrary to the statute governing the matter. We might, as it seems, decide the point involved by citing the single case recently decided by this court, of *Post v. Campbell,* 110 Wis. 378, 85 N. W. 1032, but inasmuch as counsel have argued with great confidence, apparently, that

the trial court exceeded its power by granting the amendment and that such case does not govern the matter, we will examine the subject at some length.

Counsel rely upon decisions of the courts of New York, the identity of our Code on the subject of the amendment of pleadings with that of New York, and some recognition in our reports that the scope of the statute as early understood in the latter state should be held to be its scope here. Starting with such premises, several cases are brought to our attention to show that it is not understood in New York that a complaint can properly be changed by amendment from one to wind up a partnership to one for relief not involving a partnership agreement. In our judgment, such cases, instead of supporting counsel's contention, when rightly understood are the other way. Without taking time to refer to them in detail, we will say that not one of them holds that it is not within the power of a trial court to allow a complaint to be amended so as to recover upon a different cause of action than the one originally sued on, if it is within the scope of the controversy which the pleader had in mind at the outset. Want of power is one thing; improper administration of power is quite another. It is not infrequent that counsel err by referring to cases where leave to amend was denied in the due administration of power, as authority supporting a contention of want of power. It must be kept in mind that what is challenged here is want of power. Cases holding that a recovery is improper if no amendment is made to cure the defective pleading, and cases where an amendment was applied for and disallowed and it was held on appeal that the disallowance was proper though judicial power existed to allow or disallow the same, have no place in our discussion. The fact is that the courts of New York give the power of amendment of pleadings under the Code a much broader scope than is given thereto here, and so do most Code states having provisions on the subject similar to our own. A few examples

from New York will suffice at this point to emphasize what we have said.

In *Truesdell v. Bourke,* 145 N. Y. 612, 40 N. E. 83, cited by counsel, the action was one sounding in tort. A recovery was allowed in the lower court on contract. On appeal that was held error, but because the complaint was not amended in the court below. It was by no means held or suggested that the trial court could not have permitted an amendment if an application therefor had been made, and then have granted judgment. Such an amendment would not be allowable in this state, because of the effect thereof to change the cause of action from one sounding in tort to one on contract. Not so, however, in New York. The court said: "This action is based upon fraud, and the plaintiff, before he can recover, must prove the complaint or substitute another in its place." That is readily understood when we keep in view that the court may, in New York, in a proper case, allow such substitution.

Counsel cite *Freeman v. Grant,* 132 N. Y. 22, 30 N. E. 247. An examination of that discloses plainly that the court recognized judicial power even upon the trial of an action to allow an amendment entirely changing the cause of action, as to form. "That may not ordinarily be done on the trial against the objection of the other party," said the court.

In *Brown v. Leigh,* 49 N. Y. 78, power to change the whole form of the action was distinctly held. We quote from the opinion of GROVER, J.:

"A plaintiff cannot in an amended complaint add a cause of action belonging to a different class from those in the original, retaining the latter. This would render the amended complaint demurrable. . . . But when the causes of action in the original complaint are abandoned this reason no longer applies, it being requisite only that the causes of action in the amended complaint should all belong to the same class. There is no other reason for restricting the causes that may be added."

In *Hopf v. U. S. Baking Co.* 21 N. Y. Supp. 589, a recent case, the subject of the power of the court to grant amendments to pleadings, as understood in New York, will be found discussed at much length, the conclusion reached being that it may be exercised in a proper case to the extent of changing entirely the cause of action, so long as the real controversy between the parties is not wholly departed from; that with such limitation a cause of action in equity may be changed to one at law, and one sounding in tort changed to one on contract.

In a late work on Code Pleading, by Hepburn, at sec. 306, notice is taken of the fact that in this state, unlike New York and most Code states, the limitation of power to allow amendments of complaints is to stop at such as change the cause of action as to form. It is argued that by the true spirit of the Code any amendment which the court may deem to be in furtherance of justice may be allowed, so long as it does not depart from the identity of the transaction constituting the cause of complaint and the rights of the adverse party be guarded, by the manner in which the power is administered, from being substantially prejudiced. The doctrine maintained here, that the limitation named in the statute precludes changing the mere form of the remedy, is suggested to be out of harmony with the prevailing doctrine, and to be a relic of the old régime which existed prior to the Code; that it is attributable to the disinclination of lawyers versed in the technicalities of the old system of practice to conform to the true spirit of the Code. In a general summing up of the subject at page 266 he says, in regard to the disinclination referred to:

"It appears to be responsible for the doctrine, still echoed here and there in Code states by text-writers and courts, that 'an action upon a contract cannot be changed to one in tort, or from tort to contract,' and for the doctrine that an amendment changing a legal to an equitable cause of action cannot be made, either as of course or by leave, 'not even when the facts stated would sustain either action.'

"But these relics of the older theory are not so common as to affect very seriously the truth of the proposition that the restriction imposed by the Codes in forbidding an amendment which would 'change substantially the claim or defense' does not refer to the *form* of the remedy, but to the general identity of the transaction constituting the cause of complaint."

In the note to sustain the suggestion respecting adherence to relics of the old theory, he cites only cases from this state, while he cites freely from those of New York to support the broader doctrine that the power of the court is ample to allow an amendment changing entirely the form of the action, so long as the general subject of the litigation is not departed from.

Counsel refer to *Geary v. Bennett,* 65 Wis. 554, 27 N. W. 335. In that case the power of the circuit court to grant an amendment changing the cause of action was not involved. No amendment was asked. There was no occasion for discussing the power to allow amendments. What was said as regards whether a complaint may be amended changing the cause of action so long as the cause of complaint and the form of the action is not changed, is out of harmony with prior and subsequent decisions. The decision itself was sound, but, as is often the case, language was used in reaching the conclusion, liable to mislead, as is evidenced by the attitude of counsel.

Reference is made to *Kruschke v. Stefan,* 83 Wis. 373, 53 N. W. 679. The power of amendment on application to the court was not there involved. The only question was whether the departure from the cause of complaint stated in the pleading was an immaterial variance under sec. 2669, Stats. 1898. It does not seem to be apprehended that there is a broad distinction between that section and sec. 2830. Such distinction unquestionably exists. The two sections are entirely different in purpose. The former treats of immaterial variances that may be amended as of course, with or without terms, upon application to the court, where the right of the adverse

party will not be substantially prejudiced; the latter deals with changing pleadings in matters vital to the judgment to be rendered. Reference is made to sec. 2671, which provides that when the cause of action is unproved in its entire scope the defect shall be deemed a failure of proof and not a variance, under sec. 2669, as if that were a limitation upon the power of amendment under sec. 2830. That is clearly error. A defect not amendable as a mere immaterial variance under secs. 2669 and 2670 may yet be amended under sec. 2830 or disregarded on appeal under sec. 2829, in a proper case.

The only limitation of judicial power under sec. 2830, Stats. 1898, as to allowing a complaint to be amended, is that the "claim" of the plaintiff shall not be substantially changed, and sound judicial discretion in the matter shall not be overstepped. The bearing of such limitation upon changing the cause of action within the scope of the claim has been too long settled here to be now opened for serious discussion. It may be that it was a mistake to hold, as this court did, very early after the Code was adopted here, that a change in the form of the action is a substantial change in the claim within the meaning of the statute. *Carmichael v. Argard,* 52 Wis. 607, 9 N. W. 470. Certainly, that is out of harmony with New York, the home of our Code, as we have seen. But it is too late to change the practice now. It seems clear, however, that if the framers of the Code had intended that, in a general sense, a complaint should not be amended under sec. 2830 changing the cause of action therein, language would have been used to that effect, instead of language merely preventing the court from allowing the plaintiff, by amending his pleading, to go substantially outside the scope of his claim disclosed in such pleading. In most cases a change of the form of an action within the scope of the controversy set forth in the complaint would violate the law as to the binding effect of a choice of remedies, and that may have had some effect in shaping the judicial policy of this court that such a change is

within the inhibition of the statute. In any event, subject to the one limitation mentioned in *Carmichael v. Argard,* in harmony with the practice in New York, the power of amendment as to a complaint under sec. 2830 within the scope of the claim disclosed in the pleading is without any limit except that of judicial discretion. *Fischer v. Laack,* 76 Wis. 313, 45 N. W. 104; *Post v. Campbell,* 110 Wis. 378, 85 N. W. 1032. Notwithstanding this court, by adhering to the view indicated, has subjected itself to criticism by text-writers as giving less heed to the real purpose of the Code to enable parties to end their litigation speedily regardless of mere technicalities and mistakes that do not substantially vary the course of justice as regards the right of the matter at the end than is given elsewhere (Bliss, Code Pl. § 429; Pomeroy, Code Rem. § 566; Hepburn, Development of Code Pl. § 306), it is believed that the broad scope here given to the statutes on the subject, as a whole, leaves little ground for just criticism.

Applying what has been said to the situation before us, it seems clear that there was ample authority in the circuit court to allow the amendment complained of. It did not require any new evidence. All the facts were before the court, so far as we can see. If, after the amendment, counsel for appellant considered further evidence was thereby rendered necessary, there was ample opportunity to apply to the trial court for protection in that regard.

But it is said that, notwithstanding the amendment, the complaint remained one for winding up partnership affairs. There is ground for that. However, as we have said, the real purpose of the amendment was to set up a ground for recovery disassociated with any partnership element. It was so treated by the court. It is therefore considered that the whole framework of the complaint should be deemed changed in harmony with that view. The language to effect that upon the face of the pleading was not wholly changed except by implication. The failure of plaintiff's counsel to recast the pleading to

harmonize it in a literal sense with the judgment ordered, and of the court to direct that to be done, in no way prejudiced the rights of appellant. The error is one of the sort that is cured by that valuable safeguard, sec. 2829, Stats. 1898, which saves the course of justice from being disturbed by mistakes of courts and counsel when all else fails, by requiring, in every stage of an action, disregard of every error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, and the court not to reverse any judgment or allow it to be affected by reason of any such error or defect.

There was a demurrer *ore tenus* based on the ground that a partnership to deal in lands must be in writing, and it was alleged in the complaint that it was partly verbal and partly written. It is a sufficient answer to the suggestion that the court erred in overruling such demurrer, to say that the complaint, in addition to charging that the partnership agreement was only partly in writing, alleged that it was for the purpose of dealing in lands in the states of Florida and Georgia, and that it was competent to make a verbal contract of that kind under the laws of such states.

It is suggested that the court had no jurisdiction of the subject of the action, since the lands were located in the states of Florida and Georgia. The answer to that is that the action was not *in rem*. It bore only upon the party defendant to require him to respond *in persona* to plaintiff. The rule invoked by counsel has no application to such a situation. The difference between the two situations is stated in the syllabus to *Guarantee T. & S. D. Co. v. Delta & P. L. Co.* 43 C. C. A. 396, 104 Fed. 5, cited by appellant's counsel. We quote: 'While a court of equity in one state may compel a conveyance of lands in another state by a decree *in personam* against the party who holds the title, it has no jurisdiction to itself transfer the title to such lands.' In other words a court of equity cannot exercise its jurisdistion in an action *in rem*

when the *res* is in a foreign jurisdiction. This is not such a case.

Considerable space is taken up in the brief of counsel for appellant on the subject of resulting trusts. We do not deem it necessary to enter upon that subject, since the court found, upon sufficient evidence, that the trust as to the A and D lands was created by writings and with all the statutory essentials to make the same valid.

It is said the court erred in finding an express trust in land created by writing, because it was not competent to establish the connection between the various papers relied upon, by parol testimony. It seems to be a sufficient answer to that, that no such testimony was required. The correspondence between the parties sufficiently evidences upon its face, as to each body of land, the connection between the several letters essential to make a complete contract. True, the lands were not specifically described in the correspondence, but that was unnecessary. They were so referred to as to identify them as a whole and render the particular descriptions easy of ascertainment. It is too elementary to warrant discussing the matter that a general description of land in a deed or other instrument affecting the title thereto is sufficient to satisfy the statutory requisites as to such matters being in writing if such general description is sufficient to point out the property affected with reasonable certainty. *Coats v. Taft,* 12 Wis. 388; *Simmons v. Johnson,* 14 Wis. 523. The correspondence between the parties in respect to the D lands the same as in respect to the A lands, amply shows an agreement in writing satisfying the essentials of the statute in regard to express trusts. It refers to the two bodies of land by name so as to render parol evidence admissible to show the particular descriptions of the different parcels thereof.

We have read carefully counsel's argument that there was no evidence that appellant agreed in writing to pay any sum of money for a five-sixths interest in the land or that respond-

ent agreed to pay for a one-sixth interest therein, or that any such agreement was consummated, without being able to discover any warrant for disturbing the findings of the trial court in respect thereto. Respondent wrote appellant as to the A land, stating in detail his idea of the way the same should be paid for so appellant would contribute five sixths of the price of the land and respondent one sixth thereof. Appellant replied, modifying respondent's plan in a way favorable to the latter. He unequivocally accepted respondent's views with the exception noted. It closed with a direction to conclude the trade and get the land as soon as practicable, using these words: "Get this matter through as soon as possible as some of the parties will be going away soon and money is being placed in various ways so that it will not be so easy to get later." That plainly indicates that the trust agreement was deemed complete. Respondent proceeded to and did "get the matter through as soon as possible," as suggested. We deem it unnecessary to go at length into the subject of how respondent paid his one sixth of the consideration. Suffice it to say that in our judgment the decision of the trial court that he did so is supported by the evidence. We find also the conclusion of fact as to the D lands to the effect that they were acquired by respondent, acting in the joint interest of himself and appellant, to be conveyed to the latter, but in trust for respondent as to a one-sixth interest, and that the land was so transferred, well supported by the evidence.

However, as to the D lands the evidence discloses a material matter upon which the court was properly requested to find and omitted to do so, having an important bearing. The whole history of the transactions between respondent and appellant shows that in acquiring the lands the former was morally and legally bound to obtain the same on the most advantageous terms practicable and not to swell the cost to the latter over the cost to himself. The learned circuit judge ignored the evidence establishing these facts: Whereas the

price of the D lands to respondent was $5,000, he represented it to appellant to be about $10,000. The latter, relying upon such false representations, paid the former $7,200 for a five-sixths interest in the land. We apprehend the court supposed that, since appellant knew what he got for his money, and retained the property, and it was worth the consideration paid, he was not damaged in a legal sense and therefore had no right to complain. In that the court was in error. If appellant had, with knowledge of the facts, paid $7,200 for a five-sixths interest in the lands, the case, of course, would be very different. But, as it seems, when he paid his money he was of the opinion, the same being induced by the attitude of respondent reasonably calculated to create it, that the sum paid was not in excess of five sixths of the actual cost of the land. The agreement obligated respondent to deal in the utmost good faith with his associate. It was his duty, as he himself testified, "to get the land as cheap as he could and not to pad the price in any way but to just turn the property over to appellant bottom up." That was appellant's emphatic way of saying that he was to turn a five-sixths interest in the land over to appellant absolutely at five sixths of the actual cost thereof. When he took $7,200 for such an interest, appellant must have assumed that such sum substantially represented five sixths of the actual cost of the property. Respondent wrote appellant March 28, 1895, that the land cost about $10,000, while, as we have indicated, the evidence pretty clearly shows that the actual cost was $5,000 with possibly some small additions for expenses. Following that letter there were several communications by respondent to appellant well calculated to give the latter the idea that the trade was a good one at $10,000 for the land, and to stimulate him not to inquire very closely into the precise cost thereof if he could square himself with the transaction for $7,200 for a five-sixths interest in the property. The result, as it seems, was that he directed the property to be deeded to himself, he to hold absolutely a five-

sixths interest therein, paying $7,200 therefor, and to hold
as trustee a one-sixth interest for respondent, supposing that
the latter would then have at least his proportion of the actual
cost of the property invested therein. It is quite plain that
when the letter calling for the deed was written, appellant
somewhat distrusted the truth of the representation as to the
cost. That throws light on his not being willing to stand any
greater proportion thereof, for a five-sixths interest, than
$7,200. That is the way it looks here. It is significant that
respondent had not, up to the time the misleading letter was
written, stated just what the cost of the land was. The most
he had said was that it was about $10,000. We do not over-
look the fact that respondent testified, he said to *Mr. Paul* on
one occasion before the lands were purchased that they would
cost $7,000 to $7,200. If that is of any account it corrobo-
rates the idea that when appellant, with the two representa-
tions before him, directed the deed to be made, he to pay
$7,200, he intended to name a figure which would pretty
safely guard against his paying more than five sixths of the
actual cost.

Counsel for respondent suggests that the letter above re-
ferred to did not refer to the D lands. We cannot agree with
that view. As we read the letter it speaks of the Georgia lands
as costing $10,000, and the circumstances all indicate that the
D lands were meant. With that letter in hand and relying
thereon appellant directed a deed to be made. Keeping up
the deception as to the cost of the property being about
$10,000, respondent made a deed in which the consideration
was placed at that figure. His attention being in due time
called to the matter, he at once corrected the instrument, stat-
ing that he discovered the error himself before it was pointed
out by appellant. All that indicates clearly that land which
cost respondent $5,000, with, as before stated, possibly some
slight addition for expenses, purchased for the joint interests
of respondent and appellant, with the understanding that the

latter's interest should stand him but five sixths of the actual cost to respondent, was turned over to appellant on a basis of $8,640.    Whereas he paid $7,200, he should have been required to pay but five sixths of $5,000 or $4,166.67.    In short he was defrauded to the amount of $3,033.33.

There can be no reasonable doubt as to the legal and equitable rights of appellant on the facts stated.    At the time this action was commenced he had a cause of action at law against respondent for $3,033.33, with interest thereon from the time the $7,200 was paid, to wit, April 16, 1895.

We have reached the above conclusion as to the cost of the D land to respondent without going into the evidence in detail. The correspondence shows beyond question that he paid but $5,000 to the owner.    As above suggested, there may have been some matters of expense which added to the cost, but there is no evidence on the subject.    As the matter stands we do not think justice requires or will warrant further litigation in order to determine that question.    In the very nature of things, the item of expenses cannot be sufficiently large to cut any very great figure in the ultimate result.    It is not sufficiently significant, considering respondent's position in the matter, to warrant opening up the case for the purpose of taking additional evidence.

We do not overlook the evidence of respondent, to which our attention is called in counsel's brief, that the D lands cost him $7,025.    His evidence, taken as a whole, does not impair the clear case made by the correspondence that he paid to the owner of the land $5,000 and no more.    In making up the sum of $7,025 respondent included all the checks that passed between himself and Brown, the owner of the land. They aggregated the sum named.    It seems clear that they were not all used in paying for the property.    One check of $1,000 is dated after the transaction was entirely closed. Four days before the check bears date respondent wrote appellant that he had left with Brown $2,000 to be used in other

land transactions. The clear weight of all the evidence on the subject seems to point very strongly to $5,000 as substantially the cost of the D land to respondent.

The right of a person circumstanced as appellant is respecting the situation above set forth has been heretofore considered by this court in a case directly in point. *Bergeron v. Miles*, 88 Wis. 397, 60 N. W. 783. The principle ruling the matter is the same as in any other case where one person takes another into a transaction, ostensibly on the ground floor, so to speak, in purchasing property of a third person, while he in fact, by false pretenses, is obtaining an unfair advantage over his trusting associate. The defrauded person may keep his interest in the property purchased and sue at law to recover his damages, or he may rescind the transaction and sue at law to recover the consideration which he paid for the property, or he may sue in equity for a rescission or an accounting. *Franey v. Warner*, 96 Wis. 222, 71 N. W. 81.

Complaint is made because the court awarded respondent $466.50 on account of a purchase of land not found to have been legally established as bought on joint account. It is urged that no claim was made for any such matter in the complaint; that it was outside the scope of the pleading and therefore erroneously allowed. We perceive no error at this point. The matter referred to was by no means outside the scope of the litigation. Respondent endeavored by his complaint to obtain an interest in the B lands. The claim of appellant was that instead of the understanding as to such lands being that a one-sixth interest should belong to respondent, the agreement was that he should receive as compensation for his services in respect to the property $466.50. That brought the subject of the $466.50 fairly into the litigation. Respondent failing to establish his claim for an interest in the land, but it appearing that he was in fact entitled to be paid for his services in respect to the property $466.50, the court, instead of dismissing the whole subject-matter from the case, retained

it in order to do complete justice between the parties and to prevent further litigation in respect thereto, and to that end granted respondent relief to the amount of money damages of $466.50. That was proper upon well-established principles of equity jurisprudence. If one sues in equity in good faith and fails to establish his cause but shows a state of facts entitling him to recover at law, the court, having rightfully obtained jurisdiction for a proper purpose, may retain the cause and grant just such relief as upon the facts the plaintiff appears entitled to, whether at law or in equity. *Prescott v. Everts,* 4 Wis. 314; *Hebard v. Ashland Co.* 55 Wis. 145, 12 N. W. 437; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; *Franey v. Warner, supra; Stevens v. Coates,* 101 Wis. 569, 78 N. W. 180.

Some minor questions are discussed in the briefs of counsel which we will not refer to further than to say that they have all been examined with care, with the result that we are unable to discover any prejudicial error in the record except the one to which we have referred. The interlocutory judgment must be so modified as to adjudge that defendant, in the final disposition of the case, is entitled to a credit of $3,033.33 with interest thereon at the rate of six per cent. per annum from April 16, 1895, and to have any sum found due from him to the plaintiff, with all costs of this action, taxed in plaintiff's favor in the circuit court, applied in payment thereof so far as the same will go for that purpose, and to have the residue paid to him within twenty days after the cause shall be ready for a final decree, as terms of granting the ultimate relief to which respondent shall be found entitled.

*By the Court.*—The interlocutory judgment is modified in accordance with this opinion and affirmed as modified, the appellant to have leave, upon application to the trial court, after the filing of the *remittitur* in such court, to recast and re-enter the judgment as so modified. Appellant is further entitled to recover full costs in this court.