LUETZKE and others, Respondents, vs. ROBERTS and others, imp., Appellants.

*November 9—December 4, 1906.*

*Appeal and error: Findings, when disturbed: Corporations: Subscription to stock: Promoters: Fraudulent representation: Cancellation of instruments: Evidence: Substituted service: Appearance: Jurisdiction of the person: Equity: Remedies: Personal judgment: Measure of damages.*

1. Where the evidence adduced on an issue is conflicting, and there is no clear preponderance to support appellant's claim, the findings thereon will be affirmed.
2. In an action to cancel a note given for subscription to corporate stock, the evidence, stated in the opinion, is *held* to sustain findings that two of the parties appearing on the subscription contract as purchasers of shares were not *bona fide* subscribers.
3. Where plaintiffs signed a subscription contract for shares of stock in a proposed corporation, upon an agreement between each subscriber, respectively, and the promoters of the corporation that no signature to such contract would be binding until

*bona fide* subscribers thereto for all the shares of stock had been obtained, and the promoters presented a list of persons, some of whom were not in fact *bona fide* subscribers, and thereby induced plaintiffs to execute joint notes for the amount of the total subscriptions, the action of the promoters was a wrong, fraudulent in its nature, which rendered the transaction based on it void as against plaintiffs.

4. In such case representations by the promoters' agent that the parties whose names were on the subscription contract and who had not signed the notes when plaintiffs executed them were then ready and willing to become joint makers of the notes, and that if they did not sign the notes they would pay in cash for the shares for which they had apparently subscribed, were material, and, their falsity being shown, such representations were fraudulent and rendered the transaction voidable.

5. In an action planted in equity, demanding cancellation of notes upon the ground of fraud, there was substituted service, but the defendants appeared in the action and answered generally, denying the fraud and insisting upon the validity of the notes. With such answer defendants appeared at the trial and litigated all the issues thus raised. *Held*, that the court was thereby given jurisdiction of the defendants personally, and was empowered to render whatever personal judgment was warranted by the facts and circumstances adduced within the litigated issues of the cause.

6. The effect of such appearance was to waive the want of personal jurisdiction under substituted service, and operated to confer jurisdiction as to defendants, and thus to change the character of the proceeding from one *in rem* to one *in personam*.

7. In an action in equity to cancel notes on the ground of fraud the court found, among other things, that the transaction was fraudulent; that when the action was commenced the plaintiffs had ground to and did believe that the defendants owned and held the notes in question, and that they had not pledged or hypothecated them; that they properly demanded that defendants be commanded to bring the notes into court to be canceled and annulled, and that after the action was commenced the defendants had transferred the notes to *bona fide* purchasers for value. *Held*, that such facts presented a case wherein the equitable relief sought could not be awarded, and that the only relief available was to offset plaintiffs' liability on the notes by a judgment for pecuniary compensation.

8. In such case compensatory damages are ascertainable and can be awarded in advance of actual payment of the notes by plaintiffs.

9. In such case the correct measure of damages is the amount called for by the face of the notes, with interest.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to cancel and annul three promissory notes, executed by the plaintiffs to the defendants *Roberts, Legget,* and *Hanen,* who were copartners doing business under the name of "Westfield Importing Company" of Westfield, Indiana. The defendant John Gutman signed the notes. Upon his refusal to join as plaintiff in the action he was made a defendant. The defendants Schmitz, Burke, and Craite were attorneys for *Roberts, Legget,* and *Hanen* and were joined as parties in the action upon the ground that plaintiffs believed the notes in question were in their possession as such attorneys. They with their principals were temporarily restrained from transferring or parting with the possession of the notes. The defendants Alton P. Nave and the Citizens' National Bank, a foreign corporation, after the action had been begun, petitioned, as *bona fide* owners of the notes, to be made parties defendant, and by order of the court they were allowed to intervene and were made parties defendant, whereupon they appeared generally in the action and served their answers. Before trial the complaint and answers were severally amended at different times. These need not be particularly recited. After trial, upon notice, the complaint was further amended to conform to proof, received without objection, to the effect that the principal defendants had secured the subscriptions of plaintiffs and others for shares in the proposed company upon the representation, promise, and agreement with them that they would expressly warrant the mentioned horse to be sound and free from disease. The court's findings cover the facts of the case sufficiently to present the questions upon which error is assigned upon this appeal. The material facts found by the court are as follows: In January, 1903, the defendants *Roberts, Legget,* and *Hanen* were copartners and continued so until after this action was commenced. They were engaged, under their firm name, in the

buying and selling of horses, their principal place of business being Westfield, Indiana. E. M. O'Connell was their agent, and as such agent exhibited their horse, named "Fusil," to the plaintiffs and others at the villages of Valders and St. Nazianz in Manitowoc county, for the purpose of making a sale. To make a sale of the horse, O'Connell presented to plaintiffs and others a subscription agreement of the tenor following:

"We, the undersigned subscribers, realizing the necessity of improving our stock, do hereby agree to pay the Westfield Importing Company $100 for each share in the Percheron Horse Company now being formed at Valders, Wis., to buy one Percheron stallion of the Westfield Importing Co., of Westfield, Ind. Capital stock, $3,000. Name of horse, Fusil. 31,079 (48,951). Payments to be made, one third in one year, one third in two years, one third in three years, security by joint notes with interest or by cash."

He solicited subscriptions to the undertaking, and secured plaintiffs' assent and subscriptions

"upon an understanding and agreement between each of them, respectively, and the Westfield Importing Company that no signature to said contract would be binding until *bona fide* subscribers thereto for thirty shares had been obtained by said Westfield Importing Company."

Prior to February 28, 1903, plaintiffs were informed by O'Connell that he had secured *bona fide* subscriptions to the written contract for the thirty shares. Relying upon such representation as true and correct, plaintiffs signed and executed three promissory notes, each for $1,000, in form, to wit:

"$1,000.00.                              February 28th, 1903.

"Sixteen months after date, for value received, we or either of us, promise to pay the Westfield Importing Co., or order, $1,000.00 at the Manitowoc Savings Bank, with interest at 6 per cent. per annum, interest payable annually."

The two other notes were payable in two years and four months and three years and four months after date. Eleven

of the persons who were represented to plaintiffs as subscribers to the subscription contract for shares in the horse refused to sign these notes after plaintiff had signed them, and the Importing Company has never collected or enforced payment from them upon their alleged subscriptions. An action was instituted against one of such subscribers, Knut Berg, by the company to recover $100, the amount of one share in the Percheron Horse Company, which action terminated by entry of judgment dismissing the complaint on June 22, 1903, the date the instant action was begun. Two of the alleged subscribers to shares in the Percheron Horse Company, named Alfson and Nelson, were not in fact *bona fide* subscribers, though their names were on the subscription contract. They had signed and made their subscriptions upon the express oral understanding and agreement between them and O'Connell, as agent of the Importing Company, that such subscriptions were not to hold them to liability on the contract. It was further represented by the agent, O'Connell, to three of the plaintiffs that no signature to these notes would be binding until every subscriber to the shares in the Percheron Horse Company had signed them, or, in lieu of signing these notes, had paid their shares in cash. To the other plaintiffs in this action it was represented that all the other subscribers would sign these notes or pay their subscriptions in cash, and that such payments, to apply on the purchase price, would, in case of default, be enforced against them severally. Plaintiffs relied on this, but none of these conditions have been performed, nor has the Importing Company enforced such payments. The court also found that the representation by O'Connell to the effect that he had obtained subscriptions for thirty shares of $100 each in the proposed Percheron Horse Company was in fact untrue, that he knew it to be false, and that plaintiffs believed it to be true, relied on it, and were thereby induced to execute the notes. It was also found that plaintiffs had good reason to believe and did

believe that the defendants—copartners in the Importing
Company at the time this action was commenced—had these
notes, and had not sold, pledged, or hypothecated them or
any of them; that plaintiffs before action offered the horse
in question to these defendants and demanded the return of
the notes; and that defendants refused to receive him and
have so refused to receive him ever since, and have not re-
turned the notes to plaintiffs. Plaintiffs, therefore, have been
compelled to keep, feed, and care for the horse ever since,
and such feed and care is found to be worth $12 per month.

The court found upon the issues that the defendants Nave
and the Citizens' National Bank became the holders and
owners of these notes in good faith, before maturity, and
without notice or knowledge of any infirmity as to their va-
lidity, and that plaintiffs were liable thereon to such defend-
ants, but that, as between plaintiffs and the defendants *Rob-
erts, Legget,* and *Hanen,* the notes were fraudulent and of
no effect, and that they had fraudulently and wrongfully
transferred them under circumstances which enabled the
transferees to collect and enforce them against plaintiffs to
their damage to their face amounts, namely, the sum of
$3,000, with interest from their date. Upon these findings
the court held that the equitable relief prayed for in the com-
plaint could not be awarded, but it retained the action and
awarded the only relief available to plaintiffs, namely, a re-
covery of damages in the sum of $3,000, with interest, and
costs of the suit. From this judgment the defendants *Rob-
erts, Legget,* and *Hanen* appeal.

For the appellants there was a brief by *Burke & Craite,*
and oral argument by *I. Craite.*

For the respondents there was a brief by *A. L. Hougen*
and *Nash & Nash,* and oral argument by *L. J. Nash.*

SIEBECKER, J. Error was assigned upon the court's finding
that two of the parties, appearing on the subscription contract

as purchasers of two shares in the company about to be organ-
ized for the purchase of the horse, were not *bona fide* subscrib-
ers, but that they had made such subscription with the ex-
press understanding between them and the defendants who
owned the horse that they were not to be liable on such sub-
scriptions.　The evidence adduced on this issue is conflicting,
but we can find no such clear preponderance of the evidence
in support of appellants' claim as to warrant reversing the
conclusion of the trial court thereon.　The effect of the trans-
action can scarcely be in doubt in view of the conditions un-
der which the plaintiffs appended their signatures to the sub-
scription agreement.　The court finds the fact, by consent of
counsel for all the parties to the action, that

"plaintiffs [signed] the subscription contract for a share or
shares of stock in the proposed horse company, upon an un-
derstanding and agreement between each of them, respectively,
and the Westfield Importing Company that no signature to
said contract would be binding until *bona fide* subscribers
thereto for thirty shares had been obtained by said Westfield
Importing Company."

An all-important fact to plaintiffs was that all the persons
represented as being subscribers to this undertaking would be
mutually bound to pay the $3,000 purchase money of the
horse, hence their insistence that they were not to be liable on
the subscriptions until the mutual agreement was subscribed
by *bona fide* subscribers under the agreement with defendants.
When defendants presented a list of persons, some of whom
were not subscribers, and thereby induced plaintiffs to execute
the notes in question, their action was a wrong, fraudulent in
its nature, and rendering the transaction based on it void as
against plaintiffs.　The result is that the subscription con-
tract, pursuant to which the notes were given, never became a
binding agreement on the *bona fide* subscribers, and therefore
could not be a valid basis for the notes.　It is urged that the
false representation by defendants' agent, to the effect that all

subscribers to the subscription contract who had not signed-
the notes when plaintiffs executed them would sign them
or pay their amount in cash, and, in case of their refusal,
payment would be enforced, was not a declaration on which
plaintiffs could rely as a condition of executing the notes in
question.   This is urged upon the ground that it was merely
an expression of opinion concerning the probable course of
business, and was not a positive statement of fact.   We can-
not accede to this claim.   The statement was that the parties
whose names were on the subscription contract and who had
not signed the notes when plaintiffs executed them were then
ready and willing to become joint makers of the notes, and
that if they did not so sign the notes they would pay in cash
for the shares for which they had apparently subscribed.
These representations would be a material consideration in
inducing plaintiffs to obligate themselves to join in the pur-
chase of the horse, and they no doubt were thereby induced
to sign the notes.   Their falsity being shown, it makes the
representation a fraudulent one and renders the transaction
voidable.   *Hodge v. Smith, post,* p. 326.   We deem well
founded the trial court's conclusion that these fraudulent
acts infected the whole transaction, and rendered voidable
the notes given by plaintiffs to the defendants *Roberts, Leg-
get,* and *Hanen.*

It is, however, claimed that the court erred in awarding
judgment for damages.   The action is one planted in equity,
demanding cancellation of the notes upon the ground of fraud.
Appellants contend in the first place that, since the service of
the summons on the principal defendants was by substituted
service, the action must be treated as one *in rem,* and no per-
sonal judgment could properly be rendered against them. The
summons was served as claimed, but it appears that these de-
fendants appeared in the action and answered generally in
the case, denying the allegations of fraud and insisting upon
the validity of the notes; and raised no question by their an-

swer as to the rights of transferees of the notes. With such an answer they appeared at the trial and litigated all the issues raised by their answer. This appearance gave the court jurisdiction of them personally, and empowered it to render whatever personal judgment was warranted by the facts and circumstances adduced within the litigated issues of the cause. The effect of such appearance is to waive the want of personal jurisdiction under substituted service, and operates to confer jurisdiction as to them, and thus changes the character of the proceeding from one *in rem* to one *in personam*. *Pennoyer v. Neff,* 95 U. S. 714; *Upper Miss. Trans. Co. v. Whittaker,* 16 Wis. 220; *Heeron v. Beckwith,* 1 Wis. 17; *Heidenheim v. Sprague,* 5 Wis. 258, and cases in note; *Jarvis v. Barrett,* 14 Wis. 591; *Anderson v. Coburn,* 27 Wis. 558; *Damp v. Dane,* 29 Wis. 419; *German Mut. F. F. Ins. Co. v. Decker,* 74 Wis. 556, 43 N. W. 500; 2 Ency. Pl. & Pr. 646 *et seq.,* "Waiver of defective service." Appellants further urge that, if the court acquired jurisdiction of the persons of these defendants, it had no authority to enter a personal judgment against them, because such an adjudication improperly determines rights of the parties wholly outside of the issues presented. The court found that plaintiffs had ground to and did believe, at the time this action was commenced, that these defendants *Roberts, Legget,* and *Hanen* owned and held these notes; that they had not pledged or hypothecated them; that they properly demanded that defendants be commanded to bring them into court to cancel and annul them; and that these defendants, through their further wrongful and fraudulent acts, had transferred them to the defendant Nave, that he in turn transferred them to the defendant bank, and that both of them were *bona fide* purchasers for value; that no relief of an equitable nature is now available, and that the only relief now available to offset plaintiffs' liability on the notes is a pecuniary compensation. These facts present a case wherein the equitable relief sought cannot be awarded, and the only rem-

edy available is the one of damages. This brings the case within the principle followed in a number of decisions of this court, where the cause was retained and such legal remedy awarded as the facts and circumstances proven justified. In the case of *Cole v. Getzinger*, 96 Wis. 559, 71 N. W. 75, in treating of this subject, it is said:

"It appears to be well settled that where a court of equity obtains jurisdiction for the purpose of granting some distinctively equitable relief, such as . . . the rescission or cancellation of some instrument, and it appears from facts disclosed at the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible,—of damages,—the court may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages (Pom. Eq. Jur. § 237); especially since, by the Code, the distinction between courts of law and courts of equity has been abolished." *Hall v. Delaplaine*, 5 Wis. 206; *Hopkins v. Gilman*, 22 Wis. 476; *Combs v. Scott*, 76 Wis. 662, 45 N. W. 532; *Stevens v. Coates*, 101 Wis. 569, 78 N. W. 180; *Gates v. Paul*, 117 Wis. 170, 94 N. W. 55.

It is urged that compensatory damages cannot be awarded because they are not ascertainable under the facts found, and that plaintiffs must wait until they have made actual payment of the notes. This contention cannot be sustained. The court properly held that these notes in the hands of *bona fide* purchasers for value established a liability according to their terms against these plaintiffs, and that such liability was measured by the amount they call for on their face, with interest. We deem this the correct measure of damages in the case, and within the principle of the case of *Lyle v. McCormick H. M. Co.* 108 Wis. 81, 84 N. W. 18.

These considerations are decisive of the questions presented. We find no error in the record.

*By the Court.*—Judgment affirmed.