Mueller v. Michels, 184 Wis. 324.

MUELLER and wife, Appellants, vs. MICHELS and others, Respondents.

*December 11, 1923—June 23, 1924.*

*Fraud: Exchange of property: Remedies available: Rescission: Legal or equitable: Discretion of court: Recovery of consideration: Restoration of status quo: Measure of damages on fraud: Equity: Jurisdiction if rescission is impracticable.*

1. One who has been defrauded in an exchange of property may (1) restore the original situation, rescind the contract, and recover the consideration parted with; (2) offer to restore, and, by keeping such offer good, sue in equity for a rescission and recovery of the consideration; or (3) sue at law for damages.    p. 340.

2. To recover the consideration on the ground of fraud, as a condition precedent the defrauded person must return or offer to return that which he received, and, if the fraud is established, the money or property with which the defrauded party has parted may be recovered.    p. 340.

3. In a legal rescission the defrauded party rescinds either by restoring or offering to restore the consideration received, and, if fraud be established, may recover the consideration paid; but in an action for equitable rescission the rescission does not take place until it is adjudged by the court.    p. 340.

4. An action for rescission is addressed to the sound discretion of the court, and when passed upon will not be disturbed except for an abuse of discretion.    p. 341.

5. The plaintiffs in an action for rescission, who at the commencement of the action could not restore to defendants the property received by them, cannot recover the consideration with which they parted.    p. 341.

6. Equity is designed to do justice as far as practicable between the parties, and will not do an injustice even to a wrongdoer where it can be avoided.    p. 342.

7. Where the parties to an exchange of properties agreed to pay the interest on mortgages on their respective properties to a designated date, and the defendant failed to pay the interest on the mortgage on his property to said date, but the plaintiff made no effort either to pay the interest from such date to the date the mortgage matured or the principal when due, and a situation was thereby created upon which a foreclosure could be based, the default of the defendant cannot be said to be the sole cause of the foreclosure, and, a restoration of

the *status quo* being impossible, the equitable remedy of re-
scission could not bring about substantial justice and would
be impracticable.  p. 342.

8. An action for the rescission of an exchange of property having
been begun in good faith and the relief prayed being imprac-
ticable, the court, having assumed jurisdiction, will retain it
for the purpose of doing justice.  p. 343.

9. The general rule is that a defrauded vendee is entitled, by way
of damages, to the difference between the value of the thing
as represented and its actual value.  p. 343.

10. The parties having fixed greatly exaggerated prices on their
respective properties, the proper measure of damages is the
difference between the equities in the respective lands, taking
into consideration an adjustment of the accrued interest due
upon mortgages on the properties.  p. 344.

APPEAL from a judgment of the circuit court for She-
boygan county: MICHAEL KIRWAN, Circuit Judge. *Re-
versed.*

The appeal is from a judgment dismissing plaintiffs'
complaint, with costs.

Two causes of action are separately alleged in the com-
plaint, one for rescission based on fraud, and the other for
damages for like cause.

The plaintiffs are husband and wife of about middle age,
and for and during a great portion of their existence have
been engaged in farming. The defendants *Frank Michels*
and *Margaret Michels,* his wife, are farmers and were the
owners of an eighty-acre farm in Sheboygan county, while
the defendant *Rosenthal* was a farmer and a licensed real-
estate agent in said last named county. In September, 1921,
the plaintiffs were the owners and in possession of a piece
of real estate located near the outskirts of the village of
Kiel, Wisconsin, on which were located a residence, saloon,
and dance hall. Being desirous of exchanging their said
property, plaintiffs engaged the services of said defendant
*Rosenthal* to aid and assist them in procuring some one
with whom a satisfactory exchange could be made and to
aid and advise them in such exchange. *Rosenthal* was in-

formed by the plaintiffs that the latter estimated their property at $10,000 and that they expected it to be credited at such value upon any exchange which might be effected. This property was incumbered by two mortgages aggregating $3,025. *Rosenthal* called the attention of the plaintiffs to the *Michels* farm, and on the 26th day of September, 1921, the plaintiffs, together with *Rosenthal*, called on defendants *Michels* and made an inspection of the farm and of the buildings. *Mr. Michels* told *Mr. Rosenthal* that he wanted $16,000 for the farm, but, his attention having been called to the defective condition of the roofs on the buildings, he volunteered to take $15,500 for the property. Thereupon the *Michels*, together with *Rosenthal*, made an inspection of the plaintiffs' property and were told that plaintiffs wanted $10,000 for their property, and it was thereupon agreed by and between the parties that an exchange would be effected, each party assuming the indebtedness upon the properties to be received in exchange. On September 28, 1921, a written agreement for an exchange was executed upon the terms above referred to, it being expressly agreed between the parties that each would pay the interest upon the incumbrances upon their property up to the time of the exchange. Considering the valuations of the parties as aforesaid, it was ascertained that there was a difference of $1,535 due the defendants *Michels*, which amount, it was understood, would be paid by the plaintiffs in cash; however, it was ascertained that the plaintiffs were in possession of no ready means and were unable to consummate the exchange, being unable to raise this difference in cash. Thereupon plaintiffs and *Rosenthal* skirmished around the county and interviewed various monied parties to raise the cash necessary upon a chattel mortgage of the personal property on the farm, but utterly failed in their efforts. After some negotiations it was agreed that the defendants *Michels* would accept a note for the amount, payable in six months, secured by a chattel mortgage. The proper documents for

Mueller v. Michels, 184 Wis. 324.

an exchange were thereupon prepared, executed, and delivered, including the chattel mortgage aforesaid. It is to be noted that the chattel mortgage contained the usual insecurity clause, authorizing the mortgagees, in the event of their deeming themselves insecure, to levy upon the property and to sell the same and to apply the proceeds on the payment of the note and mortgage. The parties thereupon immediately removed upon the properties received by them in the exchange. Neither of the parties complied with the agreement pursuant to which they were to pay the interest upon the incumbrances on their own property up to the date of the exchange. Within four or five days after the exchange had been effected *Mr. Michels* demanded payment of the chattel mortgage. Having no means whatever excepting only the farm and the stock upon the same, plaintiffs sold certain of the stock and realized thereon the sum of $312.95, which amount was paid over to *Michels* and the proceeds of which were in part used in paying interest on one of the mortgages upon the property originally owned by the plaintiffs, and the balance was credited upon the chattel-mortgage note. Thereafter and up to December 30, 1920, *Michels,* at intervals, persistently demanded the payment of the balance of the amount secured by the chattel mortgage, and, being unsuccessful in his efforts, seized the property under the aforesaid insecurity clause and sold the same at public auction, realizing therefrom the sum of $623.95. The plaintiffs continued to remain upon this farm until April, 1923, but being without any means of subsistence, having lost all of their personal property secured by the chattel mortgage, removed from the farm, and during the same month the owner of the $3,000 second mortgage upon the farm, on account of default in the payment of principal and interest, foreclosed the same by advertisement and the farm was thereupon sold. In the month of July, 1922, the instant action was begun.

The complaint, among other things, alleges fraudulent

representations as to the value of the farm and the personal property, also as to the status of the incumbrances upon the farm and the existence of a secret agency between the defendants *Michels* and the defendant *Rosenthal,* by the terms of which *Rosenthal,* who was known by the defendants *Michels* to be the agent of the plaintiffs, also was hired and acted as the agent for such defendants for a valuable consideration; and that, pursuant to such employment by his codefendants *Michels, Rosenthal* deliberately failed to perform his full duty as an agent for the plaintiffs and to properly or sufficiently advise them with respect to the exchange. The case was submitted to a jury upon a special verdict, and the jury found that the market value of the eighty-acre farm at the time of the exchange was $8,000; that the market value of the personal property on the farm was the sum of $1,900; that the market value of the plaintiffs' property was the sum of $4,800; that the defendants *Frank Michels* and *Rosenthal* did not represent to the plaintiffs, shortly before the date of the exchange, that the farm and personal property thereon were of the reasonable value of $16,000; that *Rosenthal* acted as the agent for the defendants *Michels* and wife as well as for the plaintiffs; that the plaintiffs did not have knowledge, before the exchange was consummated, that *Rosenthal* was acting as the agent for the defendants *Michels;* that the defendant *Frank Michels* did not, at the time of the making of the exchange, represent to the plaintiffs that he had paid the interest on the mortgages on his farm up to the date of the exchange. At the close of the evidence and before the case was submitted to the jury, the court made and entered the following finding upon the undisputed evidence:

"Before the date when the properties in question were exchanged, it was agreed between the plaintiffs on the one part and the defendants *Michels* on the other part that the unpaid interest on the mortgages of $3,025 incumbering the plaintiffs' saloon and dance hall property should be paid

by the plaintiffs up to September 28, 1921; and that the unpaid interest on the mortgages, aggregating $7,000, on the *Michels* farm should be paid by the defendants *Michels* up to September 8, 1921. The plaintiffs failed to pay the interest which they agreed to pay as aforesaid, and the defendants *Michels* also failed to pay the interest on the mortgages of $7,000 which incumbered their farm."

Upon the rendition of the verdict the defendants moved for judgment to dismiss the plaintiffs' complaint with costs, and plaintiffs moved for findings of fact and conclusions of law and for a change in the answer of the jury to question 2 in the special verdict from $1,900 to $936.60. Plaintiffs' motions were denied and defendants' motion was granted. Whereupon judgment was entered in defendants' favor, dismissing plaintiffs' complaint, with costs, from which judgment plaintiffs have taken this appeal.

For the appellants there was a brief by *Lehner & Lehner* of Oconto Falls, attorneys, and *Otto P. Lehner* of Madison, of counsel, and oral argument by *Philip Lehner* of Princeton.

For the respondents there was a brief by *Bowler & Bowler,* and oral argument by *G. W. Buchen,* all of Sheboygan.

The following opinion was filed January 15, 1924:

DOERFLER, J.   Before the introduction of any evidence defendants' counsel moved that plaintiffs be required to elect upon which cause of action they desired to rest their case. The court did not rule upon the motion but reserved its ruling, whereupon plaintiffs' counsel made the following statement, entered upon the record:

"We elect and rely upon the cause of action for equitable rescission, if there is any election necessary."

A similar motion was made, both at the close of plaintiffs' evidence and at the close of defendants' evidence, but no ruling was made by the court, the plaintiffs' counsel, however, insisting throughout the trial that the action was one

in equity for rescission. Counsel for both parties on this appeal have treated this case as an action in equity for rescission. While there is nothing definite in the record to convince one as to the attitude of the trial court on the subject, in view of the attitude of counsel we are persuaded that the court considered the action one in equity, took the verdict of the jury as advisory and inferentially adopted the same as its findings, and added the finding above set forth, based upon the undisputed evidence in the case. We therefore conclude that the action is one in equity, that the plaintiffs duly elected to stand upon rescission, and that having made such election they are bound thereby. *Limited Inv. Asso. v. Glendale Inv. Asso.* 99 Wis. 54, 74 N. W. 633; *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571; *Pfeiffer v. Marshall,* 136 Wis. 51, 116 N. W. 871; *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669; *Warren v. Landry,* 74 Wis. 144, 42 N. W. 247.

The complaint, with its two causes of action, one in equity for rescission and the other at law for damages on account of fraud, attempts to invoke two inconsistent remedies, and the defendants were clearly entitled to the granting of their motions for an election.

The plaintiffs' counsel forcibly argue in their brief and contend that the answers of the jury in the verdict on the subject of dual agency establishes fraud which entitles plaintiffs to relief for rescission as prayed for.

An agent engaged by one of the parties to aid and assist in procuring and bringing about an exchange, ordinarily cannot legally, gratuitously or for a consideration, serve the party adversely interested. "Absolute fidelity and loyalty to the interests of his principal is the first duty and the highest obligation of an agent." *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756; *Becker v. Spalinger,* 174 Wis. 443, 183 N. W. 173.

True, there are exceptions to this rule. An agent may

serve both parties where he acts as a mere middleman and where he is not called upon to exercise any judgment or discretion in the premises. He may also act as agent for both parties for a consideration where the facts with respect to his employment are fairly and fully brought home to each of the parties and where they consent thereto. Unless he comes within the exceptions above noted, a secret employment on his part by the adverse party constitutes the grossest fraud. The policy of this state upon the subject has been expressly declared by the provisions of sec. 4575m of the Statutes, making the act of an agent in violation of the provisions of such statutes a criminal offense, punishable by fine or imprisonment, or both. The jury found such undisclosed secret agency upon what appears to be quite conclusive evidence.

It is also well settled that where a contract was entered into as the result of a secret dual agency, the party upon whom the fraud has been practiced is entitled to rescind upon the ground of public policy even where there was no intention to cheat or defraud and notwithstanding no actual damages were suffered. 2 Mechem, Agency (2d ed.) § 2138; *Black v. Miller,* 71 Ill. App. 342; *Empire State Ins. Co. v. Am. Cent. Ins. Co.* 138 N. Y. 446, 34 N. E. 200.

It therefore follows that, unless plaintiffs in some way have precluded themselves from asserting the remedy, the relief prayed for should be granted.

We are now confronted with the proposition, advanced by defendants' counsel, that the plaintiffs are unable to restore the *status quo* by restoring substantially the property received by them in the exchange. Plaintiffs, by due process of law, have been divested of all of their legal title in and to their property. The personal property on the farm was seized under the chattel mortgage, sold, and converted into money, while the real estate was sold under foreclosure proceedings, leaving in the plaintiffs the mere equity of redemption. The question therefore logically arises, Are the

plaintiffs under such circumstances entitled to their equitable remedy? The general rule applicable is stated in 1 Black on Rescission and Cancellation, § 1, as follows:

"To rescind a contract is not merely to terminate it but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this, by itself, would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo,* that is an offer by the moving party to restore all that he has received under it, with a demand for the similar restoration to him of all that he has paid or given under it, and, in effect, a mutual release of further obligations."

Viewing the charges of fraud alleged in the complaint and appearing from the evidence and barring the subject of secret agency, we find that the plaintiffs, soon after the exchange, were fully apprised thereof and had ample opportunity to discover the same. The principal on the $3,000 mortgage became due on the 15th of October, 1921, at which time the interest on such mortgage also matured, and notice thereof was received by the plaintiffs. It was also forcibly brought home to the plaintiffs that the defendants *Michels* would insist upon the immediate payment of the amount represented by the chattel-mortgage note, notwithstanding the six-months period provided by the note for payment; and furthermore, the personal property was seized pursuant to the insecurity clause in the mortgage, was sold, converted into money, and applied as aforesaid. In the spring of 1922 the second mortgage upon the farm was actually foreclosed by advertisement, and the legal title, subject to an equity of

redemption, was conveyed to the purchaser. During all of this period of time the plaintiffs saw fit to abide coming events apparently without protest or complaint and without asserting any rights to rescind and without making a formal offer of rescission. In the meantime the *status quo* was materially and substantially changed. Equity will not permit one to sleep upon his rights or to stand idly by while valuable property involved in the transaction is dissipated, and then permit him to resort to the equitable remedy of rescission. Equity affords relief not to those who are negligent or indifferent but to the vigilant. *Barndt v. Frederick,* 78 Wis. 1, 6, 47 N. W. 6; *Jacobsen v. Whitely,* 138 Wis. 434, 441, 120 N. W. 285; *Baker v. Becker,* 153 Wis. 369, 381, 141 N. W. 304.

The doctrine is clearly and forcibly stated in 2 Black on Rescission and Cancellation, § 536, as follows:

"The true doctrine is that, after discovering the facts justifying rescission, the party is entitled to a reasonable time in which to decide upon the course he will take. But this does not mean that he will be indulged in a vacillating or hesitating course of conduct, but that he must act with such a measure of promptness as can fairly be called 'reasonable' with reference to all the circumstances of the particular case. Particularly he must, if possible, avoid such a delay as will make the ensuing rescission injurious to the other party or to the intervening interests of third persons. He must use reasonable diligence in ascertaining the facts which may entitle him to rescind, and must act so soon after the discovery of them as that the opposite party will not be unnecessarily prejudiced by the delay."

As a logical deduction from the foregoing, we hold, therefore, that the plaintiffs, in respect to the various allegations of fraud in the complaint, barring only that of secret dual agency, were guilty of laches and have voluntarily permitted themselves to be placed in a situation where valuable property rights have been lost or placed in a precarious condition so as to prevent a restoration of the *status quo.*

Are the plaintiffs under their complaint and the evidence entitled to a rescission upon the ground of the secret dual agency? It is elementary that a complaint in rescission on the ground of fraud should affirmatively allege the time when the fraud was discovered so as to place the court in a position where it can determine whether or not the party has acted with due diligence; and it is not only necessary to allege such fact but to prove it on the trial. Plaintiffs' counsel, in their brief, make a statement that the secret dual agency was not discovered until at or about the time of the commencement of the action. There is evidence in the case to the effect that, shortly before the action was begun, the defendant *Frank Michels* made the statement that he had agreed to pay commissions to the defendant *Rosenthal*. There is no evidence, however, in the record to indicate when 'the plaintiffs first discovered this secret dual agency. There is therefore no affirmative showing upon which the court could properly base rescission. What has heretofore been said with respect to the promptness and celerity with which one who charges fraud must act is also applicable to this branch of the case. We cannot infer from the record that the fraud involved in the secret dual agency was not discovered until shortly before the commencement of the action. A court of equity, therefore, cannot grant rescission upon this ground, and we are not in a position to disturb the judgment of the lower court for the reason that it has exercised its judgment and because an application for the rescission of a contract is addressed to the sound discretion of a court of equity. *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756.

Can a court of equity, notwithstanding its inability to grant equitable relief in this case, award damages to the plaintiffs? It has heretofore been shown that an action for damages on the ground of fraud and an action for rescission constitute inconsistent remedies and that an election to pur-

Mueller v. Michels, 184 Wis. 324.

sue the one extinguishes the other, and having elected to stand upon a rescission a court cannot award damages unless upon the trial the situation is presented which was unknown to the plaintiffs before the commencement of the action but which developed during the course of the trial which makes rescission impracticable. It is true, in cases where in the course of the trial it is made to appear that the defendants have conveyed their property to an innocent purchaser, a court of equity having taken jurisdiction of the action will retain such jurisdiction for all purposes and will award damages.

The general rule is also stated as follows: If a person in good faith brings an action in equity, alleging facts sufficient to constitute a good cause of action within some recognized principles of equity jurisprudence, and by his proofs establishes a state of facts entitling him to some relief by way of damages or otherwise, though failing to prove some fact essential to the relief sought, the court will not dismiss the bill and thereby render further litigation necessary, but will retain it and render such judgment as will do complete justice between the parties. *Franey v. Warner*, 96 Wis. 222, 71 N. W. 81; *Maloney v. Warner*, 96 Wis. 238, 71 N. W. 1119; *Cole v. Getzinger*, 96 Wis. 559, 71 N. W. 75.

The rule, as applicable to this case, however, is properly set forth in 1 Pomeroy, Eq. Jur. (4th ed.) p. 374, § 237, as follows:

"If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may, and generally will, instead of compelling the plaintiff to incur the double expense and

trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages."

This rule is cited with approval in *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 949; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75.   See, also, *Johnson v. Carter,* 143 Iowa, 95, 120 N. W. 320; *Van Dusen v. Bigelow,* 13 N. Dak. 277, 100 N. W. 723; *Muskingum Co. Comm'rs v. State,* 78 Ohio St. 287, 85 N. E. 562.

The reason for the rule as set forth in Pomeroy is apparent.   This rule is, applicable to actions which are in their nature purely equitable and where the remedies are essentially inconsistent, and therefore differs from actions where the equitable and the legal remedies are concurrent.   If that were not so, the rule requiring an election of inconsistent remedies would lose its force and would be a mere sham. One must always be impressed and bear foremost in mind the doctrine, well established in our jurisprudence, that an election to pursue one of two inconsistent remedies practically extinguishes the other.   If a plaintiff in equity can pray for rescission in a case of this kind and thereupon can recover damages, then it cannot be true that where he declares rescission he annuls the contract and where he declares for damages he affirms the contract.   The rule is modified in cases where it develops in the course of a trial that the defendant has created a situation where rescission has become impracticable because he has conveyed or disposed of the property, upon the ground that a court of equity in such case can afford relief on account of a mistake of fact, and on the further ground that the impracticability to decree rescission results from defendant's own voluntary act.   The plaintiffs herein commenced this equitable action with full knowledge of all of the facts, including that of the secret dual agency, and upon the trial nothing developed which in any way can be deemed to have taken the plaintiffs by sur-

prise.   They have deliberately assumed this position, not in
ignorance of but with full knowledge of all of the facts.
Under such circumstances, we believe that a court of equity
cannot award damages in the face of the generally accepted
doctrine that one who elects one of two inconsistent reme-
dies must stand and fall by his decision and accept the
results.

We regret the position we are thus obliged to take, espe-
cially in view of the fact, as has already been heretofore
indicated, that the defendants were guilty of an act of
fraud criminal in its nature, because the defendant *Rosen-
thal,* as the agent of the plaintiffs, grossly neglected his
obligation to act for and advise properly the plaintiffs of
their rights and liabilities, and particularly because, knowing
all of the facts, he permitted the plaintiffs to execute this
chattel mortgage with knowledge, as we assume he had,
that they could be placed in an absolutely helpless condition
by an immediate foreclosure of the chattel mortgage resting
upon the only property which they possessed on earth out
of which they could realize their only means of subsistence,
and because, bearing in mind this secret dual agency and the
bribery committed by the defendants *Michels,* it explains
fully the neglect and the failure on the part of *Rosenthal,*
the agent, to perform his primary duty, which was loyalty
to his clients.

*By the Court.*—Judgment affirmed.


The appellants moved for a rehearing.
On June 23, 1924, the following opinion was filed:


DOERFLER, J.   Upon a motion for rehearing by plaintiffs'
counsel it is urged that the court erred in holding that it
could not award damages for the reason that in bringing
this action for rescission in equity the plaintiffs had elected
their remedy, and that having so elected, with full knowl-
edge of all the facts, they must stand upon rescission; that

the plaintiffs being in no position at the time of the commencement of the action to restore the *status quo,* and it being necessary in a rescission for a party asserting this remedy to act with reasonable promptness after discovering the fraud, rescission could not be decreed, and that therefore plaintiffs are remediless.

To support the holding of this court we cited *Luetzke v. Roberts,* 130 Wis. 97, 109 N. W. 949; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; 1 Pomeroy, Eq. Jur. (4th ed.) p. 374, § 237, and a number of other decisions in this and other courts. In *Cole v. Getzinger, supra,* it is said:

"It appears to be well settled that where a court of equity obtains jurisdiction for the purpose of granting some distinctively equitable relief, such as the specific performance of a contract or the rescission or cancellation of some instrument, and it appears from facts disclosed at the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible—of damages,—the court may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages (1 Pomeroy, Eq. Jur. § 237) ; especially since by the Code the distinction between courts of law and courts of equity has been abolished. *Hall v. Delaplaine,* 5 Wis. 206, 213; *Tenney v. State Bank,* 20 Wis. 152, 161, 163, 164; *Hopkins v. Gilman,* 22 Wis. 476, 480; *Combs v. Scott,* 76 Wis. 662, 672, 45 N. W. 532; *Van Rensselaer v. Van Rensselaer,* 113 N. Y. 208, 21 N. E. 75."

That the foregoing doctrine has ample support by the decisions of this court will appear from a reading of the cases cited and referred to.

The latest decision adhering to such doctrine is *Luetzke v. Roberts, supra,* but since such decision the rule applicable has been liberalized and broadened to such an extent as to practically overrule the former holdings. In *McLennan v.*

*Church,* 163 Wis. 411, 158 N. W. 73, Mr. Justice MAR-
SHALL writing the decision, it is said:

"It is not the law, as seems to have been thought, . . . .
that·in all cases where specific performance is sought and
is not obtainable because of facts known to the plaintiff —
when he commenced his action therefor, that the court can-
not or should not grant other relief by way of compensation,
even though it be such as would be a proper subject of an
action at law for damages.   There are decisions along that
line, as *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532; . . .
but they do not indicate the limitation of the rule on the
subject.   It may be broadly stated thus: In case of an action
having been commenced in good faith to obtain equitable
relief, and it subsequently appearing that such relief cannot
or ought not to be granted, but the facts disclosed by the
evidence show that plaintiff has suffered a remediable wrong
in the transaction forming the groundwork of the action,
entitling him to be compensated by money damages, the
court may and, where justice clearly requires it under the
circumstances, should retain the cause and afford such re-
lief, and make the same efficient by provisions for a recovery
as in an ordinary legal action or as are appropriate to a
judgment for equitable relief, as may be best suited to the
circumstances of the particular case. [Citing cases.]  Under
our judicial system there are no distinctions between actions
at law and suits in equity.   We have only the civil action of
the Code as an instrumentality to redress or prevent wrongs,
triable with or without a jury according to whether the
nature of the relief demanded is legal or equitable.   There
is but one court and one form of action; therefore, up to the
point where the constitutional right of trial by jury would be
unduly prejudiced by going further, there is no want of
power to grant legal relief in an action commenced to secure
equitable relief only, and the practice to grant such relief,
in the interest of a speedy and economical settlement of con-
troversy, has been so progressive that it can no longer be
properly said that where the facts of a case warrant only
legal relief and were known to the plaintiff when he com-
menced his action for equitable relief, the court will not,
should not, or cannot afford the former.   Though a person

may know the facts entitling him only to legal relief when he commences his action for equitable relief, he may be excusably mistaken and invoke that judicial remedy without any design, or there being reasonable ground to suspect a design, to thereby invade his adversary's right of trial by jury, and the ends of justice can best be attained by finally terminating the litigation in the pending action. In such a case there is no want of jurisdiction to retain the cause for that purpose." See, also, *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 141 N. W. 701.

Undoubtedly the plaintiffs originally had the right to pursue one of several remedies: first, they had the right to restore the original situation, rescind the contract, and recover back the consideration parted with; second, they could offer to restore, and, by keeping such offer good, could sue in equity for a rescission of the contract and for a recovery of the consideration with which they parted; or third, they could have sued the defendants at law for the damages resulting from the fraud. *Denis v. Nu-Way P. C. Co.* 170 Wis. 333, 175 N. W. 95; *Heckendorn v. Romadka,* 138 Wis. 416, 120 N. W. 257.

We must bear in mind prominently the distinction between legal rescission and equitable rescission. In order to recover the consideration which a person parted with, on the ground of fraud, it is necessary as a condition precedent that the defrauded person must first either return that which he received or offer a return thereof, and if the fraud be duly established the money or property with which the defrauded party has parted may be recovered. In other words, the fraud will avoid and annul the contract; and there being, therefore, no consideration for the transaction, a recovery of the money or property parted with will be adjudged. In a legal rescission the defrauded party rescinds, and he does so by either restoring or by offering to restore the consideration received by him, and it follows as a matter of course, if the fraud be established, that he may recover the consid-

eration paid, whether it be money or property. On the other hand, the party himself does not rescind in a suit for equitable rescission. In such a case the appeal to the court is an application for the court to rescind, and the rescission does not take place until it is adjudged by the court. An action for rescission is addressed to the sound discretion of the court, and like all such matters, when passed upon by the trial court, will not be disturbed excepting for abuse of discretion. *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756. If it is a matter of discretion with the court to decree rescission or to refuse it, then it cannot be said that a party by commencing the action actually rescinds.

In *Ludington v. Patton,* 111 Wis. 208 (86 N. W. 571), at p. 245 it is said:

"The doctrine that in case of a contract voidable upon the ground of fraud the injured party must totally rescind it and restore to the guilty party all that he received from him as a condition precedent to the right to recover what he parted with, is based on the rule that, by the injured party retaining what he received and suing to recover what he parted with thereafter, he occupies inconsistent and inequitable positions which the law will not permit. That is a general rule applicable to legal actions which proceed upon the theory of a precedent rescission. . . . It does not apply in any arbitrary way at all to actions in equity for the rescission of contracts. In such actions the plaintiff does not proceed upon the theory of a contract already avoided on the ground of fraud, but upon the theory that the jurisdiction of equity is needed to accomplish that end and to give such incidental relief as the plaintiff may be entitled to. It is sufficient in such a case to show by the complaint a willingness to do equity. . . . In *Thomas v. Beals,* 154 Mass. 51, 27 N. E. 1004, the court . . . said: 'The foundation of the bill is that the rescission is not complete, and it asks the aid of the court to make it so.' "

It follows from what has been heretofore said that the plaintiffs in this case cannot recover the consideration with

which they parted, for the reason that they were in no position at the time of the commencement of the action to restore to the defendants *Michels* and wife the property received by them. Equity is designed to do justice as far as practicable between the parties, and it will not do an injustice even to a wrongdoer where it can be avoided.

The court made and entered the following finding, which is amply sustained by the evidence:

"Before the date when the properties in question were exchanged, it was agreed between the plaintiffs on the one part and the defendants *Michels* on the other part that the unpaid interest on the mortgages of $3,025 incumbering the plaintiffs' saloon and dance-hall property should be paid by the plaintiffs up to September 28, 1921; and that the unpaid interest on the mortgages aggregating $7,000 on the *Michels* farm should be paid by the defendants *Michels* up to September 28, 1921. The plaintiffs failed to pay the interest which they agreed to pay as aforesaid, and the defendants *Michels* also failed to pay the interest on the mortgages of $7,000 which incumbered their farm."

While *Michels* agreed to pay the interest up to September 28, 1921, the date of the contract, the interest became due on October 15, 1921, at which time the principal of the mortgage also became due. The plaintiffs, therefore, clearly were in default in failing to pay the interest accruing from the date of the contract to the due date, October 15, 1921, and therefore created a situation upon which a mortgage foreclosure could be based. It also appears from the evidence that no effort whatever was made by plaintiffs to pay such interest or principal when it became due. The mortgage foreclosure therefore followed, and it cannot be said that it resulted solely from the default of the defendants *Michels*. Under these circumstances a restoration of the *status quo* was impossible. While the court, nevertheless, as is indicated in the opinion, by reason of the fraud perpetrated would be authorized to decree rescission and to order an accounting, assuming that the plaintiffs could

prove that they did not become aware of the dual agency until at or about the time of the commencement of the action, nevertheless it is difficult to see how, under such circumstances, the equitable remedy if applied could bring about substantial justice. Under such circumstances it would appear that rescission would be impracticable. The decision of the lower court so implies, and we are also constrained to that view. Rescission, therefore, being the remedy sought, the action having been commenced in good faith, but the relief prayed for being impracticable, the court, having assumed jurisdiction, will retain the same for the purpose of doing justice between the parties.

The general rule is that a defrauded vendee, by way of damages, is entitled to the difference between the value of the thing as represented and the actual value. That is the rule adopted by this court. *Potter v. Necedah L. Co.* 105 Wis. 25, 80 N. W. 88, 81 N. W. 118; *Birdsey v. Butterfield,* 34 Wis. 52; *Kobiter v. Albrecht,* 82 Wis. 58, 51 N. W. 1124; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179.

It was also established by the jury that the prices fixed by the parties upon their respective properties were greatly exaggerated, as is usual and customary in an exchange of real estate. The jury also by the verdict have negatived any false representations on the part of the defendants with respect to the value of their property. We therefore have a case which differs from the ordinary case where the fraud consists of false representations as to value or quantity, quality or location of land. In each of the cases last referred to, the rule under our decisions is applicable and the damages can be readily fixed. In the instant case, however, the only fraud practiced consisted in the dual agency. What we have in mind is clearly expressed in a note to *Stoke v. Converse* (153 Iowa, 274, 133 N. W. 709), reported in 38 L. R. A. N. s. 465, 471, where it is said:

"It would seem clear that there may be false and fraudulent representations in the exchange of property, of such

character as to render it impracticable to apply as the measure of damages the rule which in general allows the difference between the actual value and the value if the articles had been as represented." See, also, *Constant v. Lehman*, 52 Kan. 227, 235, 34 Pac. 745.

This exception to the general rule substantially was adopted by the Kansas court, although the general rule there is the same as in this state. The justice of this rule is illustrated by a simple assumed transaction in *Rockefeller v. Merritt* (76 Fed. 909) 35 L. R. A. 633, 639:

"If A., by the false representation of a good title to a lot that is actually worth $1,000, induces B. to give him a lot of the same value in exchange, B.'s damage must be the actual value of the lot which he conveys. If in their contract of exchange of the lots and in their deeds they estimate and recite the value of each lot at five times its actual value, that fact cannot multiply or increase the damages of B. He loses no more than the $1,000, the actual value of the lot he parts with. As long as he accepted A.'s lot in payment for his, he may be permitted to maintain that his lot paid the debt of $5,000 which he incurred to A. for the latter's lot, because that was the contract; but the moment he brings his suit for damages, and thereby undertakes to collect the value of his lot or any part of it in money, instead of in land, he is limited to its market value and to his actual loss."

The illustration above referred to seems to indicate that the only fair and plausible measure of damages in the instant case is to award to the plaintiffs the difference between the equities of the parties in their respective lands, taking into consideration an adjustment of the accrued interest due upon the mortgages. The actual difference in the valuations of the properties exchanged, as found by the jury, is $429; that is to say, that, upon such valuations so found, plaintiffs' equities actually exceeded in value that amount over and above the equities of the *Michels*. In addition to that, the *Michels* assumed the payment of interest in the amount of $162.17 in excess of the amount assumed by the plaintiffs;

so that would fix the total damages of the plaintiffs as of the date of the contract at $591.17, for which amount plaintiffs should have judgment against the defendants.

· The opinion in the case is therefore modified in accordance with what is herein said, and anything in contravention thereof is hereby withdrawn.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to enter judgment in plaintiffs' favor for the sum of $591.17, with interest thereon from September 28, 1921, plaintiffs to have costs both on their motion for rehearing and on the appeal.