WALLOCH and wife, Respondents, vs. WASHKOWIAK and
wife, Appellants.

*January 15—April 6, 1926.*

*Exchange of property: Rescission: When timely made: Delay after
discovery of fraud relied on.*

1. In an action for the rescission of a contract for the exchange
of farm for town property on the ground of false state-
ments and a material concealment of facts by defendant, a
delay of about sixteen months in setting up his claim for a
rescission, where the falsity of the statements and representa-
tions was discovered shortly after the completion of the
transaction, precludes relief. p. 495.
2. When a party to an exchange of lands learns that one in whom
he has placed trust and confidence and upon whose state-
ments he has relied has proved false and unworthy of be-
lief, a duty devolves on such party to act promptly if he de-
sires relief in a court of equity by way of rescission. p. 497.

APPEAL from a judgment of the circuit court for Brown
county: HENRY GRAASS, Circuit Judge. *Reversed.*

This action, commenced February 12, 1923, sought rescission on the ground of fraud in an exchange of real estate made in October and November of 1921.

In 1916 plaintiff had bought a duplex flat building in Milwaukee for $3,750 and had paid thereon up to October, 1921, $810. This property had appreciated in value in the meantime, and it was found by the court to be worth $7,500 as of November, 1921.

Plaintiff, then about twenty-eight years old, who had lived all his life in Milwaukee, was advised by his wife to leave and to go on a farm for his health, and went to a real-estate agent in Milwaukee and expressed desire to exchange his property for a farm and in some Polish locality, and, accompanied by the agent, visited the eighty-acre farm of defendant near Pulaski in said Brown county. Subsequently defendant, accompanied by plaintiff, examined the Milwaukee property, and on October 25th the two signed an agreement to exchange by subsequent conveyances before November 25th; the plaintiff's property being therein described as unincumbered except a balance of $2,840 on a land contract which defendant was to pay; the defendant's title to the eighty acres, with all machinery and cattle, etc., on the farm, to be unincumbered except a certain mortgage of $5,750 which plaintiff was to pay. It provided for the payment by either defaulting party of $1,000 as damages and all commissions to the agents.

There was then outstanding of record against the farm a first mortgage of $4,550 held by the Pulaski State Bank which had been given by one Seeling in 1917, who was defendant's vendor, and which had been assumed by defendant in 1920 when he bought. (At this purchase by defendant there had been given to the bank as additional security, in order to enable defendant to borrow from the bank sufficient to complete his purchase from Seeling, a mortgage by Seeling on other property for $2,000.) There was also of record a second mortgage of $1,200 to one

Dominiczak, secured also by a chattel mortgage on the personal property and stock on said farm. There was also of record an agreement between defendant and one Swinke of Milwaukee, with whom he had negotiated a sale of the farm in May, 1921, providing for the payment by either defaulting party of $1,050 as liquidated damages.

Plaintiff shipped his furniture to Pulaski, and about the 4th of November took possession of the farm, with his father-in-law, who had had years of experience in early life on a farm, to run the same for him. It was arranged that the defendant might use the same car to send his furniture to Milwaukee, and he did so, and took immediate possession of the Milwaukee property. On plaintiff's arrival at this time he was taken by defendant to Dominiczak, the holder of said lien of $1,200, and was then informed that a substantial payment would have to be promptly made upon this chattel mortgage. Plaintiff then stated that he must return to Milwaukee in order to earn the money to make such payment, and he did so return, leaving his wife and father-in-law on the farm, and they so remained there until after the following fall.

On November 12, 1921, the defendants executed a warranty deed of the eighty acres, reciting as the incumbrance thereon a mortgage of $4,550 which the plaintiff was to pay. This was recorded November 22d.

A bill of sale was given plaintiff of the personal property dated October 27, 1921, reciting that such property was unincumbered except a chattel mortgage of $1,200 which plaintiff was to pay.

At various times during the year following and after repeated demands by the chattel mortgagee, $325 on the principal and $105 of interest, and $275 interest on the $4,550 mortgage, was paid by plaintiff. In February, 1922, the plaintiff's wife paid the taxes of $140.05 for the year 1921, and there was given at such time a tax bill showing the assessed valuation for 1921 on one forty of $2,200, on

the other of $2,900, a total of $5,100, and on the personal property of $490, making a total of $5,590.

In the fall of 1921 plaintiff paid a commission of $247 to the real-estate agent with whom he had negotiated the exchange, and defendant also paid the same agent a commission of $400.

In November, 1922, demand was made by the bank on its mortgage and foreclosure started. In February, 1923, this action was started with plaintiff still in possession of the farm. He thereafter made a tender to defendant of a quit-claim deed and bill of sale of the Brown county property. A judgment of foreclosure on the bank's mortgage was entered in August, 1923. The trial court adjudged rescission of the exchange and made an accounting between the parties.

From the judgment entered in December, 1924, defendants have appealed.

For the appellants there was a brief by *Fawcett & Dutcher* of Milwaukee, and oral argument by *George C. Dutcher*.

The cause was submitted for the respondents on the brief of *Otto P. Lehner* and *Lehner & Lehner*, all of Oconto Falls.

. The following opinion was filed February 9, 1926:

ESCHWEILER, J. The trial court held that there had been fraud perpetrated by the defendant such as entitled plaintiff to a rescission. As a basis of such conclusion it was found that there had been false statements of fact as follows:

That the farm was worth $11,000 (and that such was of fact and not opinion) ; that there was but one mortgage, and that held by the bank, of $5,750; that the farm was assessed between $8,000 and $9,000 in 1921; that it was a good farm and produced good crops; that there was no chattel mortgage; that plaintiff was ignorant of values, inexperienced and confiding, and defendant a capable and

experienced business man; that defendant paid plaintiff's agents $400 without plaintiff's knowledge or consent.

That there was a concealment of facts which defendant should have disclosed as follows:

The employment of plaintiff's agents as defendant's agents; that there was a $1,200 chattel mortgage and that only $4,550 was against the farm; that the Seeling $2,000. mortgage on other real property was pledged to the bank; that the farm and personal property were not worth to exceed $5,800; that the holders of the mortgages threatened foreclosure proceedings, and that the title was at the time of the transaction in a precarious condition.

The court further found as to several of these items the time as to when plaintiff first learned of the facts and that the defendant, except as he held the Milwaukee property, was insolvent.

An examination of the record in this case convinces us that it was the duty of the trial court to have dismissed this action because of the delay until February, 1923, in setting up this claim in an equitable action for rescission.

The plaintiff knew, prior to taking possession on November 4th and prior to the exchange of conveyances the same month, that instead of but one mortgage on the premises there were two, and that one was also a chattel mortgage, and that money must be raised in the immediate future to meet the demands of the holder of such chattel mortgage.

If, therefore, as the court finds, there was a verbal representation by defendant, relied upon by plaintiff at the time of the first visit to the farm in October, of there being but one mortgage, plaintiff knew to the contrary and could not rely thereon when the deal was closed in November by exchange of conveyances.

In the finding that there was a material false representation as to the assessed valuation for 1921 the trial court must have overlooked plaintiff's testimony in that regard,

viz. that "I never paid no attention to that." In any event the plaintiff ought to be chargeable with the knowledge disclosed from the tax receipt of February following his taking possession of the farm, which disclosed on its face the assessed valuation of $5,590 for 1921, even though plaintiff testified that it was his wife who paid the taxes. The defendant denied having so represented and testified that he did then speak of having paid $9,000 on his purchase of the farm, which amount was the consideration recited in the deed to him and testified to by him, although the son of the deceased vendor testified that but $7,050 was the actual consideration. There is some confusion in the testimony as to whether the $1,200 item included in the chattel mortgage was involved in this purchase by defendant in 1920. A barn then on the premises was burned prior to October, 1921.

There is no doubt that the farm was in a neglected condition, although there is no direct testimony to show that the crops of 1921 were either good or bad. Plaintiff's father-in-law, who ran the farm and through the season of 1922, testified that as soon as he got there in November, 1921, it was plain to him that the land and personal property were in poor condition and the buildings sadly in want of repair. He also says that the crops of 1922 were very poor. An inference that plaintiff's father-in-law and wife, remaining on this farm from November, 1921, until after the fall of 1922, communicated some at least of the facts so clearly evident to them of the condition of this property, to the plaintiff, is almost irresistible.

Reliance seems to have been placed by the trial court upon the fact that defendant paid a commission to plaintiff's agents in connection with this exchange, and the court finds that such fact was not known to plaintiff until December, 1922, more than a year after the transaction. The plaintiff, however, on direct examination testified that he learned of

this fact a couple of months later, meeting the defendant in a street car and being told of the payment of this commission by defendant.

Plaintiff testifies that it was the confidence he had in the defendant from his former acquaintance with him while they were working together in a shop in Milwaukee years before that induced him to so rely on defendant.

The trial court also finds as a material concealment the fact as to the alleged liquidated damage lien of $1,050 against the farm. This, however, was, under the uncontradicted testimony, not a substantial lien against the property and had been abandoned. No steps were taken to enforce it during the period that plaintiff had possession, and no showing made on this trial that any rights thereunder were being asserted against the defendant or the property itself. It therefore cannot be deemed material.

It is very clear under this record that if there was a deliberate attempt by defendant to cheat and defraud the plaintiff; abuse the confidence placed in him by plaintiff; a taking advantage of plaintiff's inexperience and ignorance as to farm values; material misrepresentations or concealment of facts, such was and were all done and completed at the time of the first visit to the farm in October, 1921, and not afterwards. No showing or claim is made that defendant after such first visit misled plaintiff by any artifice or prevented him in any way from learning all the facts. When a party to such a transaction has had brought home to him the fact that the party in whom he placed trust and confidence and upon whose statements he relied has proved false to such trust and unworthy of belief in material matters, then there springs into existence the duty on the part of a person so learning of such breach to act promptly if he desires assistance from a court of equity to place him in the position he was in prior to the alleged fraud. A delay in acting promptly upon such discovery forecloses him from the

equitable remedy of rescission, which is conditional upon prompt diligence on the part of a defrauded person. It is not intended that one may close his eyes as to certain material information brought home to him as to a fraud and breach of confidence and then claim the right long afterwards to open them as to such prior disclosed facts and subsequent discovery of other details of a fraud which, if perpetrated at all, was at the time of the original transaction, and then at such later discovery and time elect to rescind for such fraud.

We therefore hold that the plaintiff, having brought this action for rescission, shown not only by the precise language of the complaint but by express declaration of his counsel during the trial, rather than for damages, should have had his application to a court of equity for relief denied because of his laches. The following cases so declare and rule this one: *Stockhausen v. Oehler,* 186 Wis. 277 (201 N. W. 823), and cases cited at p. 280; *Mueller v. Michels,* 184 Wis. 324, 197 N. W. 201, 199 N. W. 380; *Sievers v. Fuller,* 181 Wis. 120, 124, 193 N. W. 1002; *Cazier v. Hart,* 158 Wis. 362, 370, 148 N. W. 860.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

OWEN, J., dissents.

On February 23, 1926, the mandate was amended to read as follows:

*By the Court.*—Judgment reversed, with costs, and cause remanded for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on April 6, 1926.